PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY, Plaintiff,

v.

Thomas LINTHICUM, et al., Defendants.

Civ. No. 89–5152.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

June 6, 1990.

Timothy Davis Fox, Holiman, Fox & Goodman, Little Rock, Ark., for plaintiff.

Truman H. Smith, Fayetteville, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

On November 28, 1989, plaintiff, Provident Life and Accident Insurance Company, initiated this action for preliminary injunctive and declaratory relief against the defendants, Thomas L. Linthicum, Patricia Linthicum, and Christy Linthicum. Plaintiff is the administrator of a self-insured employee health benefits plan for Tyson Foods, Inc. and the plan is subject to the provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* The defendants are, insofar as pertinent, covered individuals under the terms of the plan.

A hearing was held in this court on May 10, 1990, at which time the parties entered into a stipulation of facts which are intended to set forth sufficient facts to allow the court to dispose of plaintiff's claims as to the benefits already paid under the plan to the defendants. Additionally, the parties presented evidence directed to the issue of the further liability, if any, of the plaintiff to the defendants.

The stipulated facts are as follows:

1) The defendants were involved in an automobile accident with a third party named Pratt on September 5, 1987;

2) The defendants sustained injuries as a result of such automobile accident;

3) At the time of the accident the defendants were covered individuals under the terms and conditions of a health benefits plan;

4) The defendants have settled all of their causes of action relating to the automobile accident which occurred on September 5, 1987, against the third parties Pratt for the sum of $225,000.00;

5) The copy of the health benefits plan attached as Exhibit "A" to the plaintiff's complaint is a full and complete copy of the health benefits plan under which the medical care and expenses were provided to the defendants;

6) The plaintiff is the administrator of the health benefits plan under the terms and conditions of the health benefits plan;

7) The plaintiff, as administrator of the plan, has paid medical expenses and benefits for injuries incurred in the automobile accident on September 5, 1987, for the defendant, Thomas Linthicum, in the amount of $1,513.08;

8) The plaintiff, as Administrator of the plan, has paid medical expenses and benefits for injuries incurred in the automobile accident on September 5, 1987, for the defendant, Patricia Linthicum, in the amount of $2,163.47.

9) The plaintiff, as Administrator of the plan, has paid medical expenses and benefits for injuries incurred in the automobile accident on September 5, 1987, for the defendant, Christy Linthicum, in the amount of $102,060.62; and

10) The Subrogation Statement attached as Exhibit "C" to the complaint was executed by the defendant, Thomas Linthicum;

11) The Subrogation Statement attached as Exhibit "D" to the Complaint was executed by the defendant, Patricia Linthicum;

12) The Subrogation Statement attached as Exhibit "E" to the Complaint was executed by the defendants, Christy and Patricia Linthicum, where their respective names appear;

13) A hearing was held on January 30, 1990, in the case of *Thomas L. Linthicum, et al. v. Pratt, et al.*, Washington County Circuit Case No. CIV–88–112.

14) Counsel for Provident was present at such hearing;

15) An order styled Final Order was entered and the findings of the court were embodied therein on march 6, 1990; and

16) The medical expenses incurred by the Linthicums but not paid by Provident as Administrator of the plan which the Linthicums contend Provident should pay as the Administrator of the plan are:

1. Airfare for Christy and Mrs. Linthicum to and from Shepherds Spinal, incurred on or about 12/11/87, in the amount of $542.00.

2. Airfare for Christy and Mrs. Linthicum to and from Shepherds Spinal, on or about 01/11/88, in the amount of $460.00;

3. Piedmont Hotel bill for Mrs. Linthicum while Christy at Shepherds Spinal in the amount of $2,471.70.

4. Handicap Ramp for house, incurred on or about 02/22/88 in the amount of $1,798.38;

5. Adult Gingerbread Man Cross Crawl Patterning Machine incurred on or about 05/20/88, in the amount of $8,190.00.

6. National Medical Rentals (for Moto-Stand) incurred on or about 05/27/88 in the amount of $4,463.00;

7. Urologic Clinic bill incurred on or about 06/24/88 in the amount of $30.00;

8. Wal–Mart Pharmacy bill in the aggregate of $612.34;

9. Arkansas Surgical Supply Bill in the aggregate of $4,396.79;

10. Mountain Valley Special Water Cooler incurred on 06/21/89 in the amount of $226.02; and

11. Other expenses, to be identified, which together with the expenses enumerated in (1)–(10) do not exceed an aggregate amount of $35,000.00.

17) Provident filed a motion to intervene and amendments thereto in the case of *Thomas L. Linthicum, et al. v. Pratt, et al.*, Washington County Circuit Case No. CIV–88–112 and at a hearing held on November 15, 1989, Provident was denied intervention.

18) Christy Linthicum was a minor as of 9/5/87 and reached the age of majority on 9/5/88.

The plan contains a special provision entitled, "Acts of Third Parties Endorsement," which states:

A special provision applies when an Employee or a Dependant covered under the plan is injured through the act or omission of another person. When this happens, the Administrator will advance the benefits under this policy only on condi-

tion that the Employee or Dependent agrees in writing:

(1) To repay the Administrator in full any sums advanced to cover such expenses from the judgment or settlement the Employee or Dependent receives; and

(2) To provide the Administrator with a lien to repay the Administrator to the extent of medical benefits advanced by the Administrator. The lien may be filed with the person whose act caused the injuries, his agent, the court or attorney of the person covered under this plan. This provision is subject to the terms and conditions of the Company's Benefit program which are not inconsistent with the provisions of this endorsement.

This provision shall be attached to and form a part of the Company's Benefit program and shall not be held to alter or affect any of the terms of such plan other than as specifically stated.

In September, 1987, the defendants executed subrogation statements granting or acknowledging plaintiff's entitlement to repayment from sums received by the defendants in settlement of defendants' personal injury claims.

As indicated, plaintiff filed lien claims in the defendants' state court litigation and sought to intervene in that action. Plaintiff's request for intervention was denied.

Defendants have urged that the subrogation interest of the plaintiff is unconscionable and violative of the public policy of the State of Arkansas, and that the state law of subrogation does not allow an insurer a right of subrogation where the compensation recovered by the insured from the tortfeasor is less than the insured's actual loss. This proposition appears to have some support in the case law. *See Rhama, Administratrix v. Gruner,* No. J–76–C–39, memo. opin., (E.D.Ark.1979), *citing Couch on Insurance, 2d,* § 61.61; 44 Am.Jur.2d, *Insurance* § 1846. It cannot be realistically disputed that Christy Linthicum received far less compensation from the tortfeasor than that to which she would be entitled to "make her whole." Thus, the first issue is whether ERISA precludes the application of state subrogation law to this employee benefit plan.

§ 514(a) of ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *See* 29 U.S.C. § 1144(a). The Supreme Court has affirmed a broad preemptive scope for ERISA as well as the prohibition of indirect state action relating to self-funded employee benefit plans. *See e.g. Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Pension plan regulation has thus been established as an exclusively federal concern. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). 29 U.S.C. § 1144(b)(2)(A) creates an exception commonly known as the "savings clause", which exempts state laws regulating insurance, banking or securities from the preemption clause. The issue here is whether ERISA has preempted the state common law of subrogation as it relates to defendants' claims against the tortfeasor and his insurer. As sympathetic as the court is to the legal position of the defendants, it is clear that the question has already been answered in favor of the plaintiff.

In *Baxter ex rel. Baxter v. Lynn,* 886 F.2d 182 (8th Cir.1989), the Court of Appeals for the Eighth Circuit faced identical arguments:

In the present case, the Baxters allege that under state common law, the Fund is not entitled to subrogation because it had a contractual obligation, independent of Allstate's obligation to pay for the medical expenses arising from the automobile accident. The district court held that any state statutory or common law which arguably curtailed the Fund's claimed right of subrogation had a connection with the employee benefit plan and thus related to the plan. We agree. Any state law prohibiting employers from structuring their employee benefit plans in a manner that requires reimbursement in the event of recovery from

a third party creates a conflict with paragraph 17.14 of the Fund's employee benefit plan. Thus, the common law clearly 'relates to' the employee benefit plan in this case. *Accord United Food & Commercial Workers v. Pacyga,* 801 F.2d 1157, 1160 (9th Cir.1986) (Arizona anti-subrogation law relates to ERISA plan); *Davis [v. Line Constr. Benefit Fund],* 589 F.Supp. [146] at 149 [(W.D.Mo.1984)] (Missouri law of subrogation relates to ERISA plan); *Hunt by Hunt v. Sherman,* 345 N.W.2d 750, 753 (Minn.1984) (Minnesota subrogation law relates to ERISA plan).

However, the Court of Appeals indicated that this holding does not end the inquiry. State subrogation laws may still escape preemption if they fall within the insurance "savings clause". *Baxter,* 886 F.2d at 185; *Cf. Pilot Life Ins.,* 481 U.S. at 48, 107 S.Ct. at 1553; *Metropolitan Life Ins.,* 471 U.S. at 740, 105 S.Ct. at 2389. As the Supreme Court noted in *Pilot Life,* if one gives a common sense reading to the language of the clause, only laws specifically directed toward the insurance industry are exempt from ERISA preemption. *See Pilot Life Ins.,* 481 U.S. at 50, 107 S.Ct. at 1554. The Supreme Court also held that only laws that regulate insurance within the McCarran–Ferguson Act's definition of the "business of insurance" fall within the clause. *Metropolitan Life Ins.,* 471 U.S. at 742–43, 105 S.Ct. at 2390–91.

The factors to be considered in making the determination are: (1) whether a particular practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. *Baxter,* 886 F.2d at 185–86.

As to state subrogation laws in particular, the court held that as to a self-insured fund, such a fund cannot be subject to even indirect regulation:

We agree with the district court that the law of subrogation, while generally appli-

cable to insurance contracts, is not specifically directed toward the insurance industry. While laws regulating subrogation rights apply in part to holders of insurance, they do not regulate the insurance industry directly. Application of differing state subrogation laws to plan providers throughout the United States would frustrate ERISA's uniform treatment of benefit plans. Thus, a common sense reading of the insurance saving clause indicates that common law rules on subrogation are not the type of state insurance regulations intended to survive the broad scope of ERISA preemption. *See also Minnesota Chamber of Commerce & Indus. v. Hatch,* 672 F.Supp. 393, 399 (D.Minn.1987) (Minnesota statute requiring employers who provide self-funded health benefit plans to file security or surety bond is not directed exclusively toward insurance industry).

Furthermore, we find, as did the district court, that the three-part analysis under the Mccarran–Ferguson Act yields a similar result. The practice of subrogation does not transfer the risk from a policyholder to his or her insurer. Rather, it limits the recovery available to the policyholder by preventing a double recovery. While we believe that subrogation rights play an integral role in defining the relationship between Christopher Baxter and the Fund, we believe that the laws of subrogation are applied in many factual circumstances unrelated to the insurance industry. *Accord Davis,* 589 F.Supp. at 149; *Hunt,* 345 N.W.2d at 753. *Contra United Food Workers,* 801 F.2d at 1161 (Arizona anti-subrogation statute, although not limited to insurance industry, sufficiently regulates insurance industry to meet McCarran–Ferguson test).

Even if the laws on subrogation constituted insurance regulations, the deemer clause, codified at 29 U.S.C. § 1144(b)(2)(B), prevents their application to self-funded employee benefit funds.[1]

**1.** The deemer clause provides: "Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section

1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under

An employee benefit plan cannot be deemed to be an insurance company 'for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.' 29 U.S.C. § 1144(b)(2)(B). *In Metropolitan Life*, 471 U.S. 724, 105 S.Ct. 2380, the Supreme Court held that the deemer clause protected self-funded employee benefit plans from state insurance regulations but allowed state regulation of plans insured by independent insurance companies. *Id.* at 747, 105 S.Ct. at 2393. Thus, if the Fund purchased insurance from an independent insurance company, a subrogation clause in the insurance contract could be subject to state regulation. In the present case, however, the Fund is completely self-insured, and as such, cannot be subject to even indirect regulation. *Accord United Food & Commercial Workers*, 801 F.2d at 1161–61 (state subrogation statute did not apply to self-funded employee benefit plan); *Minnesota Chamber of Commerce*, 672 F.Supp. at 399 (same). Thus, any state subrogation law cannot be applied to the self-funded Central States employee benefit plan. We hold, therefore, that any such state law is preempted by ERISA.

■ Although a federal policy discouraging a double recovery weighs less heavily in the instant case than in *Baxter*, because defendants will not be made "whole" either way, *Baxter* leaves little room for a contrary analysis. This court is bound by the *Baxter* decision and it accordingly follows that if state law pertaining to subrogation operates so as to preclude the plaintiff from enforcing its plan "subrogation" rights, such would clearly be preempted by ERISA which, under *Baxter*, allows such subrogation rights to be enforced despite any state laws to the contrary.

■ Perhaps recognizing this, defendants argue that, in any event, plaintiff is bound by the state court rulings as a result of the "full faith and credit" statute 28 U.S.C. § 1738 and by the doctrines of *res judicata* and collateral estoppel. The problems with this argument are many.

In the first place, plaintiff's motion to intervene in the state court proceedings was denied, which *ipso facto* means that plaintiff was not a party to those proceedings. *See Gahr v. Trammel*, 796 F.2d 1063 (8th Cir.1986). Therefore, plaintiff cannot be bound by the ruling of the state court.

Secondly, even if plaintiff had somehow expressly or impliedly agreed that Arkansas' Medical, Nursing, and Hospital Lien Act, Ark.Code Ann. § 18–46–101 *et seq.* applied to or governed plaintiff's obligations, such an agreement is of no effect when the subject matter of the litigation is a factual scenario governed by ERISA. *See Matter of HECI Exploration Co., Inc.*, 862 F.2d 513 (5th Cir.1988).

Further, there is some question as to whether the state court could exercise jurisdiction of plaintiff's claims to part of the proceeds of the defendants' tort litigation even if it purported to. Under 29 U.S.C. § 1132(e), district courts of the United States have exclusive jurisdiction of claims under ERISA with the exception that state courts have concurrent jurisdiction of actions brought under § 1132(a)(1)(B). That section provides:

A civil action may be brought—

(1) by a participant or beneficiary—

＊　　＊　　＊　　＊　　＊　　＊

(B) to recover benefits due to him under the terms of his plan to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

Defendants did not seek in the state court, to recover benefits due from the plaintiff under the plan, nor to enforce their rights under the terms of the plan as to benefits already paid by the plan, nor apparently to clarify their rights to future benefits under the plan. In fact, defendants opposed plaintiff's involvement in the

---

such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B).

state court proceedings at every opportunity. These are the only ERISA-related matters the state court could validly consider. As to plaintiff's entitlement to recover benefits paid to the defendants and plaintiff's rights under the plan's acts of third-parties endorsement provisions, it would appear that this court's jurisdiction is exclusive, and if it is, then it matters not what the state court held or did not hold, as such would be void for lack of subject matter jurisdiction insofar as it concerns plaintiff's rights to recoup any benefits paid. To that extent, it does not matter whether plaintiff litigated, accidently or on purpose, its rights to recover benefits already paid, nor whether a final order affecting those rights was ever entered in the state court or not, particularly since plaintiff was not made a party to those proceedings.

■ Therefore, there is no barrier to plaintiff's action in this court seeking to recover previously paid benefits as allowed by the plan. The only question is whether the language of the plan, in fact, authorizes such a recovery. It clearly does, in the "Acts of Third–Parties Endorsement." It is inescapable that plaintiff is entitled to recover from the proceeds of defendants' tort settlement the sum of $105,737.17.

■ The second issue requiring the attention of the court is whether the defendants are entitled to additional plan benefits not previously paid by the plaintiff. Defendants seek reimbursement for charges incurred by Patricia Linthicum at the Piedmont Hospital Guest Center while Christy Linthicum received rehabilitative care.

With regard to this claim, plaintiff contends that the claim for $2,471.70 was not submitted and in any event is not a covered expense under the plan, although the expense was incurred within the coverage period. The testimony indicated that the defendants either submitted the claim for this expense to Tyson Foods, Inc. which, for some reason, did not submit it to the plaintiff, or was excused from so doing by the conduct of plaintiff's agent, Tyson Foods, Inc. Page 37 of the plan states, *inter alia.*

[N]otice given by or on behalf of the claimant to the Administrator ... or to the Tyson Foods, Inc., with information sufficient to identify the Employee shall be deemed notice to the Administrator.

Thus, the lack of notice caused by Tyson's dereliction of duty is not a barrier. The court concludes that the plan contains a provision which may fairly be construed as extending plan coverage so as to include Patricia Linthicum's stay at the guest house, because the same was prescribed by a physician as medically necessary to the care of Christy Linthicum. Accordingly, plaintiff is liable for this expense in the aforementioned amount.

For clarification, whenever in this opinion the court refers to the coverage period of the plan, the court means the coverage period as provided by the plan and any extension coverage of the period of time to which the plan is applicable by virtue of COBRA, Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, 29 U.S.C. § 1161 *et seq.*

■ The next group of expenses includes approximately $4,396.79 in charges incurred by the defendants at the Arkansas Surgical Supply Company. Plaintiff urges that a claim for these expenses was not submitted but that had a claim been submitted these expenses would have been covered by the terms of the plan. The court finds that the defendants did all that they could reasonably be expected to do with regard to the submission of this claim. Therefore, the court concludes that plaintiff is liable to the defendants for the expenses incurred with the Arkansas Surgical Supply Company, which were incurred within the covered time period.

Defendants seek reimbursement for $226.02 in expenses incurred with Mountain Valley Water in obtaining bottled water for Christy. The court regretably concludes that this expense was not incurred during the coverage period.

The next group of expenses incurred by the defendants with the Wal–Mart pharmacy. Plaintiff admits that $612.34 of these expenses would be covered by the terms of

the plan had defendants submitted a claim for them. As indicated earlier, defendants either did submit these various claims or were excused from so doing by the conduct of plaintiff's agent for receipt of notice, Tyson Foods, Inc. Therefore, defendants are entitled to be reimbursed for this claim.

For the same reason defendants' claim for services received by Christy Linthicum at the Urology Clinic in the amount of $30.00 should be allowed.

■ Defendants also seek reimbursement for airfare incurred in temporarily returning home from her rehabilitation therapy. Plaintiff denied the request on the basis that the plan covers only:

Transportation by ... scheduled commercial airline to but not from a Hospital equipped to furnish special treatment. . . .

The testimony indicated that the temporary return home was a normal part of the treatment, in order for the patient to be able to evaluate where she "stood" insofar as her progress toward self-sufficiency is concerned. Therefore, the first return trip home is not a final departure from the rehabilitation center but is instead part of the rehabilitation process and is therefore not transportation "from" the hospital. Further, the plan does not confine coverage solely to the transportation of Christy, and therefore, because it was medically necessary for Patricia Linthicum to be with Christy during rehabilitation and during transportation, expenses incurred by Patricia Linthicum in traveling to the rehabilitation center and for the first trip home will be considered to be covered.

■ The defendants also make a claim for $8,190.00 for a "Gingerbread Man" exercise machine. Plaintiff contends that no claim was submitted. However, defendants could not afford to incur this expense and, therefore, did not actually pay for the machine. The court finds this to be irrelevant and further finds it to be an expense covered by the plan and plaintiff is accordingly liable for the cost of the same. The same holds true for the "Moto–Stand" for which defendants seek $4,463.00 and the plaintiff is similarly liable for the cost of the same.

Defendants seek $1,798.00 for ramp construction in and around their home. The court cannot locate plan provisions which can reasonably be construed as providing coverage for this expense. The same is true of defendants' expenses incurred for a six foot folding ramp, and defendants are, therefore, not entitled to reimbursement for these expenses.

■ Defendants also seek monies for home health care provided by the family. The plan clearly covers only:

Charges made by a Home Health Care Agency for care in the home which commences within seven days following confinement in a Hospital. . . .

The court is not empowered to re-write the plan merely because the court might believe a provision to operate unfairly. Accordingly, defendants are not entitled to monies to compensate them for home health care provided by the family.

Finally, defendants claim reimbursement for airfare to Miami, which was medically necessary to help Christy develop kidney and bowel functions and to allow her an opportunity to reach her potential maximum realization of residual functional abilities. The court finds that this expense was not incurred during the coverage period of the plan and, therefore, plaintiff is not liable for the same.

An order will be entered granting the plaintiff judgment on its subrogation claim. Defendants are directed to submit a proposed judgment as to their claims for unpaid benefits in accordance with this memorandum opinion, within eleven days.