[Nos. A055730, A057515. First Dist., Div. One. Aug. 17, 1993.]

ARTHUR BRADLEY SAMURA, Plaintiff and Appellant, v.
KAISER FOUNDATION HEALTH PLAN, INC., et al., Defendants and
Appellants.

COUNSEL

Manuel Glenn Abascal, Kathy S. Abascal and Stephen Kaus for Plaintiff and Appellant.

Kennedy P. Richardson, Mark Palley and Lillian F. Hamrick for Defendants and Appellants.

OPINION

NEWSOM, J.—The Kaiser Foundation Health Plan, Inc., the Permanente Medical Group, Inc., and Kaiser Foundation Hospitals (hereafter Health Plan or Kaiser) appeal a judgment of the Alameda County Superior Court requiring extensive changes in the third party liability provision in service agreements with members. The theories alleged in the original complaint, filed by the plaintiff, Arthur Bradley Samura, on November 20, 1985, were greatly expanded in a first amended complaint filed about three and one-half years later. This amended complaint states a multifaceted legal challenge to the third party liability provision, together with associated administrative practices, and seeks injunctive relief on behalf of Samura and other Health Plan members similarly situated pursuant to Business and Professions Code sections 17200 and 17203.

Following trial, the court issued an order on May 31, 1991, granting the relief that is the subject of this appeal. At Health Plan's request, it subsequently delivered a statement of decision clarifying the legal basis for the

order. The provisions of the order were incorporated in a judgment, filed on October 10, 1991, from which Kaiser now appeals. Samura filed a cross-appeal claiming the right under state and federal law to an order enjoining the administration of the third party liability provision in any form.

Health Plan is a nonprofit health maintenance organization licensed under the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq., hereafter Knox-Keene Act) and qualified under the federal Health Maintenance Organization Act of 1973. Like other health maintenance organizations, it provides health care services, in consideration for the payment of monthly dues, pursuant to service agreements with individual members and group service agreements with employers and union trust funds. The individual and group service agreements contain certain standard limiting conditions, including the third party liability provision at issue here. Health Plan does not itself provide medical care but rather contracts with the other defendants, the Permanente Medical Group, Inc., and Kaiser Foundation Hospitals, for the actual health care services.

The third party liability provision provides that, if a member receives medical services under the service agreement for an injury caused by a third party and subsequently recovers a settlement or judgment as compensation for the injury, the member will pay Health Plan for the services from the proceeds of the settlement or judgment. A separate schedule establishes the fees for the medical services.[1] The provision gives the Health Plan "a lien on the settlement or judgment" for the purpose of collecting its charges. As a means of enforcing the lien, subdivision 6C(1)(d) of the provision gives Health Plan a right of subrogation against the third party, and subdivision (e) accords priority to the Health Plan lien in payment of the proceeds of the settlement or judgment. Samura has abandoned his challenge to the subrogation provision in this suit, choosing to pursue it in a separate lawsuit. This appeal thus concerns the provisions of subdivision (e) and related administrative practices.

Subdivision (e) provides: "Health Plan (or its designee) shall be entitled to the payment, reimbursement, and subrogation as provided in this Section C(1) regardless of whether the total amount of the recovery of the Member (or his or her estate, parent or legal guardian) on account of the injury or illness is less than the actual loss suffered by the Member (or his or her estate, parent or legal guardian). The proceeds of any judgment or settlement obtained by Health Plan (or its designee) or the Member (or his or her estate,

---

[1]The reasonableness of the fees is not at issue here as Samura abandoned his challenge to the fee schedule in the lower court.

parent or legal guardian) on account of the injury or illness shall first be applied to satisfy Health Plan's (or its designee's) claims, liens, and other rights under this Section C(1)."

The principal features of the third party liability provision are summarized in a pamphlet, entitled "Disclosure Form & Evidence of Coverage," which is given to all members. In a concisely written paragraph, Health Plan again claims a lien on the proceeds of a settlement or judgment in the full amount of its charges.[2]

Health Plan collects its charges under this provision through a third party liability department that sends an array of standard letters to members and their attorneys. Upon learning that a member is pursuing a claim against a third party, the department sends the member a "medical payment order" itemizing the charges for medical services rendered and notifying the member of Health Plan's right of reimbursement. An accompanying letter sent to the member's attorney states that, if the bill is paid promptly in full, Health Plan will bear a pro rata share of the member's attorney fees.[3] When the third party claim results in a recovery through a settlement or judgment, the department ordinarily demands full payment of the charges, reduced only by a pro rata share of the attorney's contingency fee. But in the event that the recovery does not adequately compensate the member, the department may express a willingness to negotiate a further reduction in its claim. A standard letter states: "B) If liability problems compel the plaintiff or his attorney to compromise a claim for a figure substantially below the reasonable norm, our charge may be negotiated in a related fashion. [¶] C) If the plaintiff or his attorney is compelled to accept a final recovery which is totally disproportionate to the amount of damages and severity of injury (due to liability

---

[2]"If injury or illness is claimed to be caused by any act or omission of a third party, services and other benefits are furnished or arranged by Medical Group physicians and Kaiser Permanente medical facilities at non-member rates. Payment is the member's responsibility, except that the member is not required to pay any portion of such charges for services which is in excess of the total amount collected from or on behalf of the third party on account of such acts or omissions, whether by settlement or judgment and Health Plan (or its designee) shall have a lien on the settlement or judgment for that purpose. At Health Plan's (or its designee's) request, the member (or his/her estate, parent or guardian) shall execute a lien form(s) directing his or her attorney or the third party to make payments to Health Plan (or its designee). In the event that Health Plan is required to institute legal action to enforce its lien, the member shall reimburse Health Plan for the reasonable costs of collection, including attorney's fees."

[3]The letter sent to Samura's attorney stated: "It is our current policy to allow a reduction of our bill if the net amount due is promptly paid in full. The reduction is on a pro rata basis, equal to the contingency percentage charged to your client. The reduction does not apply to an agreed upon compromise of our claim, nor does it apply to any supplemental charges previously paid by the member."

problems or inadequate insurance coverage), our third party reimbursement may be negotiated further."

The manager of the third party liability department testified that, as a rule of thumb, the department declines to negotiate a reduction of its charges if the tort recovery is three times the amount of its bill. The critical considerations, however, are the relation of the tort recovery to the member's economic losses, such as lost wages or lost earning capacity, and the prospect of "significant on-going" future medical costs. In some cases, the department will waive its rights to reimbursement entirely. As an example of a case in which it would consider waiving its rights, the manager used the following hypothesis: if the member is billed for $20,000 but recovers only $15,000 and "if the future medical is going to be $100 thousand and he's now a paraplegic and will never be able to return to work, not only will we probably significantly consider reducing the case, but waiving our rights to reimbursement." Even though he did not present such an extreme case, the department waived Samura's claim in accordance with its "normal approach" because his recovery was less than his lost wages.

The order on appeal enjoins Health Plan "to clarify and explain the TPL [third party liability] terms in its agreements as follows: [¶] 1. Rewrite the TPL term in plain English and give greater prominence to the term in the contract. [¶] 2. Include a provision in the contract that standardizes and clarifies the method of reducing the amount of its claim if a member is not adequately compensated by a settlement agreement in third party litigation and include a provision in the TPL term for determining whether or not a member is adequately compensated. [¶] 3. Provide in the contract that [Health Plan] will share pro rata in the costs of litigation and attorney fees. [¶] 4. Refrain from calling the TPL term a 'reduction.' [¶] 5. Inform members in the medical payment order that [Health Plan] will share pro rata in litigation costs and in attorney fees. [¶] 6. Inform members in the medical payment order that [Health Plan] may reduce the amount of its claim if the member is not adequately compensated. [¶] 7. Refrain from combining the medical payment order with a medical information release authorization form. [¶] 8. Refrain from including any representations that the TPL term excludes or reduces coverage in the contract or standard form letters to members and/or their attorneys. [¶] 9. Standardize form letters regarding the TPL term to ensure that all members are informed of [Health Plan's] practice of reducing its claim to share pro rata in costs of litigation and attorney fees."

As it purports to enjoin unfair competition pursuant to Business and Professions Code section 17203, the propriety of the order depends on the

definition of unfair competition in Business and Professions Code section 17200. The term was there defined to include any "unlawful, unfair or fraudulent business practice."[4] "California courts have consistently interpreted such language broadly. ■ An 'unlawful business activity' includes ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' " (*People* v. *McKale* (1979) 25 Cal.3d 626, 632 [159 Cal.Rptr. 811, 602 P.2d 731]; *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113 [101 Cal.Rptr. 745, 496 P.2d 817].)

As the statement of decision makes clear, the order is largely premised on alleged violations of the Knox-Keene Act, but paragraph 2—by far the most important provision—presents other issues of substantive law. The paragraph implies that the third party liability provision cannot be validly enforced against members who are not "adequately compensated" by the tort recovery from the third party causing their injury. We will first examine the case law in point.

With the exception of two out-of-state decisions which we have no reason to follow, the courts have upheld third party liability provisions according to their terms. In *Block* v. *Cal. Physicians' Service* (1966) 244 Cal.App.2d 266 [53 Cal.Rptr. 51], which concerned the service agreement of a health maintenance organization like Health Plan, the court rejected a challenge to a third party liability provision as being an assignment of a cause of action for personal injuries. (Accord, *Lee* v. *State Farm Mut. Auto. Ins. Co.* (1976) 57 Cal.App.3d 458, 465-466 [129 Cal.Rptr. 271].) Although the *Block* decision did not consider the enforceability of the provision against a beneficiary receiving inadequate compensation from the third party, this issue was addressed by *Travelers Indem. Co.* v. *Ingebretsen* (1974) 38 Cal.App.3d 858 [113 Cal.Rptr. 679], in the closely analogous context of a subrogation clause. Property insurance companies there asserted third party claims against a judgment partially compensating homeowners for losses sustained in a landslide. The court rejected a claim that the insurance companies should be denied any recovery until the homeowners were fully compensated for the losses. Under the circumstances of the case, it held that the "the insurer should be entitled to subrogation without regard to whether the insured has first been 'made whole.' " (*Id.* at p. 866.)

Other jurisdictions have enforced third party liability provisions against undercompensated beneficiaries. *In re Estate of Scott* (1991) 208 Ill.App.3d 846 [153 Ill.Dec. 647, 567 N.E.2d 605], upheld such a provision even

---

[4]As amended, the code currently provides for any "unlawful unfair or fraudulent business act or practice." (Stats. 1992, ch. 430, § 2.)

though it served to deplete a grossly inadequate recovery for a disabling injury. Dismissing an argument that the provision was "inequitable," the court held: "This is not a case based in equity, but rather on contractual terms." (*Id.*, 567 N.E.2d at p. 607.) Again, *Sargeant* v. *Local 478 Health Benefits & Ins. Fund* (D.Conn. 1990) 746 F.Supp. 241, found no authority in Connecticut law for qualifying an insurer's right to enforce a third party liability provision. A line of decisions applying federal substantive law under the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.) has similarly enforced third party liability provisions where the beneficiary claimed to be inadequately compensated by the recovery from the third party. (*Molina* v. *Retail Clerks Unions etc. Benefit Fund* (1980) 111 Cal.App.3d 872 [168 Cal.Rptr. 906]; *Provident Life and Acc. Ins. Co.* v. *Linthicum* (W.D.Ark. 1990) 743 F.Supp. 662; *Hunt by Hunt* v. *Sherman* (Minn. 1984) 345 N.W.2d 750.) Other decisions have refused to restrict enforcement of a third party liability provisions to the portion of the recovery attributable to medical expenses. (*Foremost Life Ins. Co.* v. *Waters* (1982) 415 Mich. 303 [329 N.W.2d 688]; *Dugan* v. *Nickla* (N.D.Ill. 1991) 763 F.Supp. 981.)

Two decisions, however, have limited the enforcement of third party liability provisions on the ground of public policy. *Westendorf by Westendorf* v. *Stasson* (Minn. 1983) 330 N.W.2d 699, 702, construed a vaguely worded third party liability provision in the light of an applicable Minnesota regulation and concluded that it gave a health maintenance organization the right "only to payments specifically collected by the enrollee for . . . medical expenses." In addition, since the provision did not expressly give the health maintenance organization priority to the disputed proceeds, the court relied on the general rule that "absent express contract terms to the contrary, subrogation will not be allowed where the insured's total recovery is less than the insured's actual loss." (*Id.* at p. 703.) *Powell* v. *Blue Cross and Blue Shield* (Ala. 1990) 581 So.2d 772, went a step further. The third party liability provision expressly gave the insurer first priority over proceeds that the beneficiary collected from a third party, specifying: " '. . . The right to reimbursement . . . comes first even if a Member is not paid for all of his claim for damages against the other person . . . .' " (*Id.* at p. 774, italics omitted.) The court, however, found the provision to be inconsistent with the traditional equitable principle denying a right of subrogation "until the plaintiff/insured has been fully compensated for her loss." (*Id.* at p. 773.) Refusing to "undermine the equitable principles upon which subrogation is based" (*id.* at p. 775), it held "that the insurer has no right to subrogation unless and until the insured is made whole for his loss." (*Id.* at p. 777.)

The *Westendorf* decision can clearly be distinguished from the present case. There is no comparable California regulation affecting interpretation of

the third party liability provision, and the language of the provision here explicitly gives Health Plan priority to the proceeds of a recovery from a third party. The *Powell* decision is in point, but it stands in opposition to a line of authority allowing the insured and insurer to modify by contract the traditional equitable rule conditioning the right of subrogation on the insured's full compensation. (*Peterson* v. *Ohio Farmers Ins. Co.* (1963) 175 Ohio St. 34 [23 Ohio Op.2d 311, 191 N.E.2d 157, 159-160]; *Garrity* v. *Rural Mut. Ins. Co.* (1977) 77 Wis.2d 537 [253 N.W.2d 512, 515-516]; *Hill* v. *State Farm Mut. Auto. Ins. Co.* (Utah 1988) 765 P.2d 864, 868; *Culver* v. *Insurance Co. of North America* (1989) 115 N.J. 451 [559 A.2d 400, 402-404].)

■ Health Plan also argues that the Department of Corporations, which is entrusted with the regulation of health maintenance organizations, has in effect sanctioned the third party liability provision at issue here. Pursuant to Health and Safety Code section 1352.1, subdivision (a), Health Plan has submitted the original health service agreement and every subsequent amendment to the department for its review without receiving any objection. Under some unusual circumstances, such repeated administrative review followed by an absence of objection may be entitled to much the same effect as actual approval. (*Bernardini* v. *Home and Automobile Insurance Co.* (1965) 64 Ill.App.2d 465 [212 N.E.2d 499, 501]; *Smith* v. *Motor Club of America Ins. Co.* (1959) 54 N.J.Super. 37 [148 A.2d 37, 41]; *Demmery* v. *National Union Fire Insurance Co.* (1967) 210 Pa.Super. 193 [232 A.2d 21, 24].) In an appropriate case, it may serve to invoke the rule that a regulatory agency's interpretation of a statute it is reponsible for enforcing is entitled to "great weight." (*Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 425 [261 Cal.Rptr. 384, 777 P.2d 157].) However, the rule has no application to the present case since the Department of Corporation's nonobjection to the provision cannot be clearly linked to the interpretation of any statute it is charged with enforcing. (See *Armistead* v. *State Personnel Board* (1978) 22 Cal.3d 198, 204-205 [149 Cal.Rptr. 1, 583 P.2d 744]; *Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 273 [203 Cal.Rptr. 672]; *Frenzer* v. *Mutual Ben. H. & A. Assn.* (1938) 27 Cal.App.2d 406, 414 [81 P.2d 197].)

■ Samura's argument based on public policy is similarly inconclusive. (See *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680].) Government Code section 985, which authorizes the trial court to reduce the amount of the contractual lien under some circumstances, applies narrowly to judgments against a public entity. Labor Code section 4903.1, subdivisions (a)(2) and (4), gives the appeals board discretionary authority to reduce the amount of liens claimed by health benefit

plans against an applicant's *settlement* recovery but allows unrestricted enforcement of liens against the proceeds of workers' compensation *awards*. Two other statutes limit the state's lien for recovery of Medi-Cal benefits (Welf. & Inst. Code, § 14124.78) and hospital liens for emergency services (Civ. Code, § 3045.4) to one-half a beneficiary's tort recovery, but these isolated provisions are not enough to evidence a general public policy.

On balance, our review of applicable law does not reveal any persuasive support for the rule effected in paragraph 2 of the judgment, that is, a rule limiting enforcement of the third party liability provision "if a member is not adequately compensated by a settlement agreement in third party litigation." But neither does the decisional law offer any consistently persuasive rationale for the third party liability provision; the various reasons offered in justification of the provision are all of limited application and may be entirely absent in some hard cases.

*Block* v. *Cal. Physicians' Service, supra,* 244 Cal.App.2d 266, regards the third party liability provision as serving the goals of cost reduction and avoidance of double recovery: "The clause is . . . part of an over-all program sanctioned and encouraged by the Legislature . . . to provide medical and hospital services on a nonprofit basis at a minimum expense to those participating. [Citation.] . . . While [plaintiff] has a right to seek to be made whole, it is unfair for him to seek enrichment by double recovery which would result from retention of all proceeds of the settlement of his suit against Cray and of all medical and hospital benefits paid to him by defendant Service under its agreement—for the same injuries—all eventually at the cost of the participating members of the plan." (*Id.* at p. 273.) But the justification of cost reduction will apply to any exclusion or limitation on insurance coverage, or, for that matter, to elimination of insurance coverage altogether; it has no peculiar force as a rationale for the third party liability provision. Moreover, the possibility of a double recovery—or, in the case of a health maintenance organization, a windfall recovery for medical expenses that the insured did not incur—arises only where the insured recovers the cost of medical expenses from the third party. The third party liability provision is not limited to this element of recovery, and respondent argues plausibly that various factors, such as underinsurance, compromise, and attorney fees, tend to prevent any actual windfall in most cases.

Language in certain cases suggests another possible rationale for the third party liability provision: the parties may reasonably agree to give the payment of medical costs a higher priority than the recovery of noneconomic damages for pain and suffering. Thus, in *Hartford Accident & Indemnity Co.*

v. *Gropman* (1984) 163 Cal.App.3d Supp. 33 [209 Cal.Rptr. 468], the court precluded the defendant from showing the portion of her tort recovery that related to medical bills, "as opposed to other special damages and general damages for pain and suffering." (*Id.* at pp. Supp. 38, 41.) This justification, of course, will apply only when the recovery includes damages for pain and suffering.

Though never clearly articulated, the most important rationale may turn on the concept of fault; it may be thought that the burden of medical expenses should be placed on the wrongdoer. In *Wright* v. *Department of Benefit Payments* (1979) 90 Cal.App.3d 446 [153 Cal.Rptr. 474], where the state sought to recoup the amount of Medi-Cal benefits from a personal injury settlement, the court alluded to the concept of fault in rejecting a due process objection: "Traditional notions of due process and fundamental fairness are not offended by a statutory scheme which permits the public treasury to be reimbursed from Patrick's recovery from the party who caused the injuries for which Medi-Cal paid for the treatment." (*Id.* at p. 451.) This justification assumes that the recovery from the party at fault will create a fund from which medical costs may be paid without burdening the injured party. But where the tort victim does not recover enough from the third party to compensate for lost wages, future loss of earning capacity, or uninsured future medical expenses, the victim will also bear the burden of paying medical expenses from the tort recovery; in such cases, the third party liability provision may represent a heavy burden on the injured party by reducing recovery of actual economic losses.

In short, the third party liability provision may sometimes operate in a harsh and one-sided manner without any justification, which raises the possible application of the doctrine of unconscionability. ■ As embodied in Civil Code section 1670.5, subdivision (a), the concept of "unconscionability has both a 'procedural' and a 'substantive' element." (*A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 486 [186 Cal.Rptr. 114, 38 A.L.R.4th 1].) "The former includes (1) 'oppression,' which refers to an inequality of bargaining power resulting in no real negotiation and the absence of meaningful choice; and (2) 'surprise,' which occurs when 'the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.' . . . [¶] 'Substantive' unconscionability consists of an allocation of risks or costs which is overly harsh or one-sided and is not justified by the circumstances in which the contract was made. [Citation.] Presumably both procedural and substantive unconscionability must be present before a contract will be held unenforceable. However, a relatively larger degree of one

will compensate for a relatively smaller degree of the other." (*Dean Witter Reynolds, Inc.* v. *Superior Court* (1989) 211 Cal.App.3d 758, 767-768 [259 Cal.Rptr. 789].)

■ In those cases where the third party liability provision has a harsh and one-sided impact, a Health Plan member could unquestionably present a strong defense to the enforcement of the provision on this ground. The provision is not subject to negotiation (although a prospective member may possibly have the option of shopping for an alternative health plan without the provision). And it represents a departure from the general pattern of the health service agreement that may arguably result in surprise.

We have not found any decision actually adjudicating a third party liability provision as being unenforceable on the ground of unconscionability, but the issue is not in dispute in this appeal. Displaying a commendable candor, Health Plan concedes that judges can "reject applications of subparagraph (e) that shock their conscience." To its credit, it has adopted a policy of waiving the provision in hard cases, despite the absence of precise legal guidelines.

In summary, we have seen that paragraph 2 of the judgment reflects an improper distinction between adequately and inadequately compensated members. The boundaries of legality in the application of the third party liability provision are found rather in the doctrine of unconscionability. Should the judgment be revised to refer instead to the doctrine of unconscionability? The question is linked to another asserted omission in the third party liability provision which is addressed in paragraph 3 of the judgment—reference to the common fund rule. ■ It is well established that, when two or more parties are entitled in common to a fund created by a recovery from a third party, and the costs of litigation have been borne by only one of them, the courts in the exercise of their inherent equitable powers will require the apportionment of costs and attorney fees. (*Lee* v. *State Farm Mut. Auto. Ins. Co., supra,* 57 Cal.App.3d 458, 466-468.) (**1d**) Thus, the courts will reduce Health Plan's lien under the third party liability provision by its pro rata share of the member's costs in securing a judgment or settlement from the third party.

In its statement of decision, the trial court based its order in part on the principle, enunciated in *People* v. *McKale, supra,* 25 Cal.3d 626, 635, that it is an unfair or fraudulent business practice "to assert a contractual right that one does not have." (Cf. *People* v. *Custom Craft Carpets, Inc.* (1984) 159 Cal.App.3d 676, 683-684 [206 Cal.Rptr. 12].) The third party liability

provision at issue asserts an unqualified right to recover the cost of medical services from a member's recovery from a third party. In fact, Health Plan's right of recovery is qualified in two respects—by the doctrine of unconscionability and by the common fund rule. The failure of the third party liability provision to refer to the limitations on Health Plan's right of recovery, the trial court suggests, constitutes a form of unfair competition under Business and Professions Code section 17200.

We do not consider, however, that the present case comes within the *McKale* principle. The defendant mobilehome park in the *McKale* decision included certain unlawful provisions in its rules and regulations which it did not actually attempt to enforce. Despite the lack of enforcement, the court held that the use of the provisions could still be enjoined: "When a mobilehome park operator requires tenants to sign park rules and regulations which the park is prohibited by law from enforcing, those tenants are likely to be deceived, and allegations of unfair competition based thereon are sufficient to withstand demurrer." (25 Cal.3d at p. 635.)

In contrast, the third party liability provision at issue here is entirely lawful on its face but, like many contract provisions, may be subject to certain defenses and exceptions in application. Health Plan does not try to outline in advance all the factors that may affect application of the provision but rather employs form letters acknowledging these limitations when they arise. Upon learning of a member's claim against a third party, it routinely sends to the member's attorney a letter alluding to its obligation to reduce its claim under the common fund rule. This practice, we find, has no significant tendency to mislead. Again, following recovery by settlement or judgment, it considers whether enforcement of its lien would work a hardship on the member and expresses a willingness to negotiate a reduction of its claim where the possibility of hardship exists. ██ █ We express no opinion as to whether Health Plan actually avoids problems of unconscionability in this manner—the evidence on this point is conflicting—but we do not consider that it acts unlawfully in negotiating the issue on a case by case basis. In the absence of regulatory guidelines promulgated by the Department of Corporations,[5] the unsettled state of the law and the many potential

---

[5]The matter plainly calls for legislative or regulatory action. As indicated by our analysis, the third party liability provision in practice runs the gamut from essential fairness to unconscionability. Some appropriate formula or guideline might avoid its application, or modify its rigor, in hard cases. Respondent notes ironically "that persons who are Kaiser members through Medi-Cal fare better than persons who pay dues directly." (See Welf. & Inst. Code, § 14124.78.) But despite the desirability of some such limitation, we cannot say

variables bearing on the issue make it difficult to resolve the problem of unconscionability through a set formula.[6]

We turn now to the question whether the order on appeal was properly based on violations of the Knox-Keene Act. ■ We note preliminarily that Business and Professions Code sections 17203 and 17200 do not confer on Samura a general power to enforce the act. This power has been entrusted exclusively to the Department of Corporations, preempting even the common law powers of the Attorney General. (Health & Saf. Code, §§ 1341 and 1346; *Van de Kamp* v. *Gumbiner* (1990) 221 Cal.App.3d 1260 [270 Cal.Rptr. 907].) Among other things, the Department of Corporations has exclusive power to regulate the provisions of health service agreements of health maintenance organizations and the content of the required disclosure form and evidence of coverage pamphlets. (Health & Saf. Code, §§ 1351 and 1363.)

But, despite the existence of a statutory enforcement scheme, Samura may still sue to enjoin acts which are made unlawful by the Knox-Keene Act. In *People* v. *McKale, supra,* 25 Cal.3d 626, the Supreme Court held that existence of such a distinct enforcement scheme does not preclude a suit to enjoin unfair competition premised on an unlawful practice. The district attorney there sued to enjoin multiple violations of the Mobilehome Parks Act which the Commission on Housing and Community Development was expressly authorized to enforce. The Supreme Court held "that even though a specific statutory enforcement scheme exists, a parallel action for unfair competition is proper pursuant to applicable provisions of the Business and Professions Code." (*Id.* at p. 632.) Following *McKale,* other decisions have upheld use of Business and Professions Code section 17200 to enjoin acts which are declared to be unlawful under a statutory enforcement scheme. (*People* v. *Los Angeles Palm, Inc.* (1981) 121 Cal.App.3d 25, 33-35 [175

---

that Health Plan acted unlawfully in failing to incorporate a precautionary formula of some kind in the provision.

[6]Though the issue has never been adjudicated, a practice of enforcing the third party liability provisions with disregard for considerations of unconscionability might constitute an unfair business practice in violation of the unfairness term of Business and Professions Code section 17200. (*Shadoan* v. *World Savings & Loan Assn.* (1990) 219 Cal.App.3d 97, 101 [268 Cal.Rptr. 207]; *People* v. *Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 530 [206 Cal.Rptr. 164, 53 A.L.R.4th 661].) But the record here contains no finding of such a practice. We see no other issue relating to the unfairness term of Business and Professions Code section 17200 deserving of extended discussion. The term does not give the courts a general license to review the fairness of contracts but rather has been used to enjoin deceptive or sharp practices. (See *Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197 [197 Cal.Rptr. 783, 673 P.2d 660]; *People* v. *Bestline Products, Inc.* (1976) 61 Cal.App.3d 879, 915 [132 Cal.Rptr. 767].)

Cal.Rptr. 257]; *People* v. *Casa Blanca Convalescent Homes, Inc., supra,* 159 Cal.App.3d 509, 516-520, 531.)

■■■ In its statement of decision, the trial court relied on a number of provisions of the Knox-Keene Act, including Health and Safety Code section 1342, subdivision (b), section 1360, subdivision (a)(2) and (a)(3), section 1363, subdivisions (a) and (c), and section 1367, subdivision (h). However, only section 1360, subdivision (a)(2) and (a)(3), defines an unlawful act that may be enjoined as unfair competition under the Business and Professions Code; the other statutes pertain to the exercise of the Department of Corporation's regulatory power.

Health and Safety Code section 1360, subdivision (a) broadly prohibits deceptive practices in advertising or soliciting participation in a health care service plan: "No plan, solicitor, solicitor firm, or representative shall use or permit the use of any advertising or solicitation which is untrue or misleading, or any form of evidence of coverage which is deceptive." Subdivision (a)(2) and (a)(3) provide that a statement may be deemed misleading or deceptive even if it is literally true.[7]

We note that by its terms Health and Safety Code section 1360 has little relevance to the matters enjoined in the judgment. The statute does not apply to communications between Health Plan and its members; it therefore has no application to paragraphs 5, 6, 7 or 9 of the court's order. Moreover, we construe the statute as applying only to the deceptive "use" of documents in advertising or solicitation. Documents that are not actually used for this purpose will not come within the terms of the statute, even though they come within the definition evidence of coverage under Business and Professions Code section 1345. Thus, since there is no evidence that the health care service contract here was actually used in acquainting the public with the

---

[7]". . . For purposes of this article: [¶] (2) A written or printed statement or item of information shall be deemed misleading whether or not it may be literally true, if, in the total context in which the statement is made or such item of information is communicated, such statement or item of information may be understood by a person not possessing special knowledge regarding health care coverage, as indicating any benefit or advantage, or the absence of any exclusion, limitation, or disadvantage of possible significance to an enrollee, or potential enrollee or subscriber, in a plan, and such is not the case. [¶] (3) An evidence of coverage shall be deemed to be deceptive if the evidence of coverage taken as a whole and with consideration given to typography and format, as well as language, shall be such as to cause a reasonable person, not possessing special knowledge of plans, and evidence of coverage therefor to expect benefits, service charges, or other advantages which the evidence of coverage does not provide or which the plan issuing such coverage or evidence of coverage does not regularly make available to enrollees or subscribers covered under such evidence of coverage."

terms of the plan, we have no need to consider whether the contract complies with the statutory standards of section 1360.

Under our interpretation, Health and Safety Code section 1360 applies only to paragraph 4 of the judgment—a rather trivial provision enjoining Health Plan "from calling the [third party liability] term a 'reduction.' " We find nothing misleading or deceptive in the use of this term. The Knox-Keene Act has three classifications of provisions limiting coverage: exceptions, reductions and limitations. (Health & Saf. Code, § 1362.) Since the third party liability provision ordinarily requires partial payment for a health care service provided to a member, it best fits the definition of a reduction in benefits. (Health & Saf. Code, § 1362, subd. (c); Cal. Code Regs., tit. 10, § 1300.67.4, subd. (a)(3).)

The other statutory provisions cited in the statement of decision serve to govern the Department of Corporations in the exercise of its regulatory powers. Health and Safety Code section 1342 contains a statement of legislative purpose; section 1363 regulates the content of the disclosure form provided to prospective members; and section 1367 sets forth certain requirements for health care service plans and requires service agreements to be "fair, reasonable, and consistent with the objectives of this chapter." In relying on these provisions, the court improperly sought to enforce compliance with the regulatory guidelines and requirements of the Knox-Keene Act. Thus, paragraph 1 requires that the third party liability term be written "in plain English" and be given "greater prominence"; paragraphs 5, 6 and 7 concern statements in the medical payment order sent to members subject to the third party liability provision; paragraph 8 concerns representations that the third party liability term "excludes or reduces" coverage; and paragraph 9 concerns content of standard form letters.

It is immaterial whether or not the challenged contract provisions and business practices comply with these portions of the Knox-Keene Act because the statutes do not define unlawful acts that may be enjoined under Business and Professions Code section 17200.[8] In basing its order on these provisions, the trial court assumed a regulatory power over Health Plan that the Legislature has entrusted exclusively to the Department of Corporations. Samura unquestionably has certain remedies if the Department of Corporations fails to discharge its responsibilities under the Knox-Keene Act (see Health & Saf. Code, § 1397), but the courts cannot assume general regulatory powers over health maintenance organizations through the guise of

---

[8]Our observation extends to the many other provisions of the Knox-Keene Act cited in Samura's brief.

enforcing Business and Professions Code section 17200. (Cf. *Rubin* v. *Green* (1993) 4 Cal.4th 1187, 1201-1202 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) To the extent that the order on appeal is based on portions of the Knox-Keene Act having a purely regulatory import, it improperly invades the powers that the Legislature entrusted to the Department of Corporations.

■ In a separate appeal, Samura claims that the trial court erred in refusing to enjoin enforcement of the third party liability provision in any form. It raises only one issue not covered in the preceding analysis—the applicability of the federal Health Maintenance Organization Act of 1973 (42 U.S.C. § 300e et seq.). The federal statute provides certain forms of financial assistance and other benefits to qualifying health maintenance organizations. Samura points out that the act specifically authorizes a health maintenance organization to seek reimbursement from workers' compensation benefits (42 U.S.C. 300e(b)(1)(D)), and argues that this narrow authorization implies that federally qualified health maintenance organizations are prohibited from adopting broader provisions providing for reimbursement from third parties. We find it unnecessary to enter into the complicated legislative and regulatory history in point. Whatever may be the impact of the provision on Health Plan's status under the Health Maintenance Organization Act, we find nothing in the statute or related regulations that declares a third party liability provision to be unlawful as a matter of substantive law. Hence, assuming without deciding that Business and Professions Code section 17200 can be employed to enjoin violations of federal law, Samura cannot predicate a cause of action under section 17200 on violation of the federal Act. (Cf. *People* ex rel. *Dept. of Transportation* v. *Naegele Outdoor Advertising Co.* (1985) 38 Cal.3d 509, 523 [213 Cal.Rptr. 247, 698 P.2d 150]; *Diaz* v. *Kay-Dix Ranch* (1970) 9 Cal.App.3d 588 [88 Cal.Rptr. 443].)

Since the trial court's order must be reversed, we do not reach the question whether Samura's cause of action is preempted by the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.) to the extent that it applies to group plans of employers and unions.

The judgment is reversed.[9] Costs to Health Plan.

Strankman, P. J., and Stein, J., concurred.

The petition of appellant Arthur Bradley Samura for review by the Supreme Court was denied December 16, 1993. Kennard, J., and Arabian, J., were of the opinion that the petition should be granted.

---

[9]Our reversal of the judgment also entails reversal of the lower court's order awarding attorney fees with respect to which Health Plan has filed a separate notice of appeal.