[No. B122526. Second Dist., Div. Three. Oct. 5, 1999.]

CHARLES STEVENS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
API INSURANCE SERVICES, INC. et al., Real Parties in Interest.

[No. B122539. Second Dist., Div. Three. Oct. 5, 1999.]

CHARLES STEVENS, Plaintiff and Appellant, v.
API INSURANCE SERVICES, INC. et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Norman Goldman, Norman M. Goldman and Jeffrey S. Reynolds for Petitioner and for Plaintiff and Appellant Charles Stevens.

Creason & Aarvig and Larry A. Dunlap for Real Party in Interest and for Defendant and Respondent Guaranty National Insurance Company of California.

No appearance for Respondent Superior Court.

Law Offices of Paul A. Brennan and Paul A. Brennan for Real Parties in Interest and for Defendants and Respondents Eddie Obeid and Secured Auto Insurance Services.

Law Offices of David D. Garfinkle, David D. Garfinkle and Stanley D. Clough for Real Party in Interest and for Defendant and Respondent API Insurance Services, Inc.

Kopeny & Powell and William J. Kopeny for Real Parties in Interest and for Defendants and Respondents Guaranty National Insurance Company of California and API Insurance Services, Inc.

Callahan, McCune & Willis and Robert W. Thompson for Real Party in Interest and for Defendant and Respondent Star Ford.

Horvitz & Levy, Frederic D. Cohen and Mitchell C. Tilner for Western General Insurance Company as Amicus Curiae on behalf of Real Parties in Interest and Defendants and Respondents.

## OPINION

## ALDRICH, J.—

### INTRODUCTION

We are asked in this case to resolve whether a plaintiff, on behalf of the general public, may state a claim under the Unfair Competition Act (Bus. & Prof. Code, § 17200, hereinafter, the UCA), for the violation of provisions of the Insurance Code and the California Code of Regulations, which require that insurance agents, brokers, and automobile dealers be licensed to transact insurance. We hold that the UCA allows, and neither section 1631 of the Insurance Code,[1] nor California Code of Regulations, title 10, section 2110 et seq. (hereinafter title 10, section 2110), bars actions brought by private plaintiffs under the UCA for violations of these licensing requirements. We further hold that while restitution is available under the UCA as the applicable remedy, plaintiff has not properly pled restitution. While such causes of action may be stated, the operative complaints here are deficient, and so leave to amend the complaints should have been granted. Accordingly, we reverse the trial court's ruling and grant the writ petition.

---

[1]Hereinafter, all statutory references shall be to the Insurance Code unless otherwise noted.

## Factual and Procedural Background

Charles Stevens (Stevens), who was an uninsured driver and who purchased insurance under the program here at issue, brought two related actions as private attorney general under the UCA against defendants Guaranty National Insurance Company of California (Guaranty National), API Insurance Services, Inc. (API), and Star Ford, among others. The trial court sustained without leave to amend defendants' demurrers to three causes of action. In No. B122526 (hereinafter the first action), Stevens has filed a petition for writ of mandate challenging the dismissal of the fifth cause of action in his second amended complaint. In No. B122539 (hereinafter the companion case), Stevens appeals from the judgment of dismissal after the trial court sustained without leave to amend the demurrers to the only two causes of action in his first amended complaint. We issued an alternative writ and consolidated the two cases for purposes of review. In the counts at issue, Stevens's complaints allege that defendants violated Insurance Code section 1631 and title 10, section 2110 et seq. by transacting insurance without being duly licensed.

On review from the judgments sustaining demurrers without leave to amend, we accept as true the factual allegations contained in the two operative complaints. (*Moncur* v. *City of Los Angeles* (1977) 68 Cal.App.3d 118, 121 [137 Cal.Rptr. 239].) As general factual recitations, the complaints allege: Guaranty National sold to car dealers "Master Commercial Automobile Insurance Policies" (master policies) providing bodily injury coverage for unsold cars on the dealers' lots. Cars are typically added to the master policy's schedule as they arrive from the manufacturer, and are deleted from the master policy as they are sold. API knew that financing companies typically refuse to fund loans without insurance on their collateral (i.e., the vehicles) when individual purchasers are uninsured. Hence, API devised a program to sell automobile physical damage insurance polices to uninsured car-purchasers and lessees in California at the time the cars are sold. API recruited automobile dealerships and Guaranty National to participate in this program.

Under the program, the complaints allege, automobile dealers ascertain whether the purchasers are uninsured, solicit the sale of coverage to the purchasers and then call insurance brokers to the dealers' lots. The brokers add the purchasers to the dealers' master policies. Rather than receiving actual physical damage *policies*, the purchasers are given certificates of coverage reflecting their addition as named insureds under the dealers' master policies.

In the first action, Stevens alleges in his fifth cause of action, that *API,* as managing general agent for Guaranty National, sold insurance under the

program in violation of section 1631[2] because it was not licensed to "transact insurance"[3] as defined in section 35.[4] Guaranty National, the complaint alleges, "failed to discontinue business with API" or to require API to obtain a license. Continuing, Stevens alleges, ". . . the failure to have a license . . . is actionable as an unfair business practice . . . ." Stevens brings this cause of action under the UCA against API, and against Guaranty National "for appointing and working through an unlicensed agent."

The companion case differs in that it focuses on the *car dealers'* failure to hold licenses to transact insurance, in violation of sections 1631, 1635, 1637, 1640, 1647, and title 10, section 2110 et seq.[5] Containing but two causes of action, the first amended complaint alleges that the car dealers participated in the insurance program by "sell[ing] insurance" but that the dealers neither held licenses to sell nor were supervised by licensed insurance personnel. Participation in the program without holding licenses, Stevens alleges, constitutes an unlawful and unfair business practice under the UCA.

In both lawsuits, Stevens alleges that defendants reaped large profits from selling the insurance under the program. API is alleged to have obtained a $50 policy fee and another $200 broker fee from each purchaser. Stevens prays in both complaints for restitution or disgorgement of all profits, benefits, and monies gained from the unfair business practices, and also seeks injunctive relief in the companion case only.

The trial court issued its rulings sustaining API's and Guaranty National's general and special demurrers to the UCA claims. In its minute orders reflecting the rulings, the court stated its "conclu[sion] that the Legislature did not intend to allow an action seeking disgorgement for breach of the statute (Insurance Code Section 1631). Furthermore, the Court conclude[d] that no unfair business practice is alleged, because [the] legislative intent of Insurance Code Section 1631 et seq. is to exclude the subject insurance

---

[2] Section 1631 states, "Unless exempt by the provisions of this article, a person shall not act in any of the capacities defined in Article 1 of this chapter unless he holds a valid license from the commissioner authorizing him to act in such capacity."

[3] In his reply to Guaranty National's and API's returns to the petition for writ of mandate, Stevens explains, while he alleged in his complaint that API obtained a license in 1997, that actually *API has never been licensed.*

[4] Section 35 provides, " 'Transact' as applied to insurance includes any of the following: [¶] (a) Solicitation. [¶] (b) Negotiations preliminary to execution. [¶] (c) Execution of a contract of insurance. [¶] (d) Transaction of matters subsequent to execution of the contract and arising out of it."

[5] Title 10, section 2110 states, "Every dealer who enters into a motor vehicle insurance transaction shall be licensed to transact insurance as an agent or broker, or both, unless he receives no commission dealer's reserve or bonus dependent directly or indirectly upon insurance and the insurance is personally transacted by a dealer's subsidiary or other licensee."

arrangement from the scope of entities [or individuals] expressly subject to the licensing requirements." Concluding further that plaintiff has not shown a reasonable possibility of successful amendment, the court denied leave to amend. Stevens petitioned this court for a writ of mandate in the first action and filed his timely appeal in the companion case.

## CONTENTIONS

Stevens contends he has stated causes of action under the UCA for violation of section 1631 and title 10, section 2110 et seq.

Defendants and amici contend (1) Stevens may not predicate his UCA claim on the violation of these insurance licensing statutes; (2) defendants were not transacting insurance; and (3) Stevens is not entitled to restitution or disgorgement because defendants were not unjustly enriched.

## DISCUSSION

■ A demurrer lies only for defects appearing on the face of the complaint or from matters of which the court must or may take judicial notice. (*Ramsden* v. *Western Union* (1977) 71 Cal.App.3d 873, 879 [138 Cal.Rptr. 426].) For the purpose of determining the effect of a complaint, its allegations are liberally construed, with a view toward substantial justice. (*Quelimane Co.* v. *Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7 [77 Cal.Rptr.2d 709, 960 P.2d 513], quoting from Code Civ. Proc., § 452.)[6]

■ "In reviewing the sufficiency of a complaint against a general demurrer . . . we [must] determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment; if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) If we conclude that the complaint does not state a claim, but there is a reasonable possibility that the defects can be cured by amendment, leave to amend must be granted. (*Quelimane Co.* v. *Stewart Title Guaranty Co., supra,* 19 Cal.4th at p. 39.)

---

[6]In their return and opening brief on appeal, Guaranty National and API make many factual assertions, particularly in describing the nature of the insurance program at issue, without proper citation to the record or with citation only to their filings before the Department of Insurance. We disregard all factual assertions in the brief which are not supported by record citations, as they violate California Rules of Court, rule 15(a). As will be more specifically explained *post,* in part 2, we further disregard all factual assertions which are supported by citations to the documents Guaranty National submitted to the Department of Insurance because they are not cognizable under either *Ramsden* v. *Western Union, supra,* 71 Cal.App.3d at page 879, or Evidence Code section 459, subdivision (c).

1. *Stevens may state a UCA claim based on conduct which violates section 1631 and title 10, section 2110 et seq.*

■ The UCA defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." (Bus. & Prof. Code, § 17200; *Stop Youth Addiction, Inc.* v. *Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 560 [71 Cal.Rptr.2d 731, 950 P.2d 1086] (*Stop Youth Addiction*).) The UCA works by "borrow[ing]" violations of other laws and treating those transgressions, when committed as a business activity, as " '*unlawful* business practices.' " (*State Farm Fire & Casualty Co.* v. *Superior Court* (1996) 45 Cal.App.4th 1093, 1103 [53 Cal.Rptr.2d 229], disapproved on another point in *Cel-Tech Communications, Inc.* v. *Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 184-185 [83 Cal.Rptr.2d 548, 973 P.2d 527] italics added by *State Farm*.) Such unlawful business practices are " ' "independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." ' [Citation.]" (*Stop Youth Addiction, supra,* at pp. 566-567.)

With respect to the scope of the UCA, our Supreme Court has observed that its " ' "sweeping language" . . . include[s] " '*anything* that can properly be called a business practice and that at the same time is *forbidden by law.*' " ' [Citation.]" (*Stop Youth Addiction, supra,* 17 Cal.4th at p. 560, italics added.) Hence "[v]irtually any law—federal, state or local—can serve as a predicate for a section 17200 action. [Citation.]" (*State Farm Fire & Casualty Co.* v. *Superior Court, supra,* 45 Cal.App.4th at pp. 1102-1103.)

■ Stevens contends that he may maintain his claim for unfair business practices based on the violation of the licensing requirements of section 1631 and title 10, section 2110 et seq., because these latter statutes *do not bar private enforcement* of the licensing requirements. We agree.

Our Supreme Court recently provided the analytic framework for determining when a predicate law may serve as the basis of a UCA action. (*Stop Youth Addiction, supra,* 17 Cal.4th at p. 562, fn. 5.) In *Stop Youth Addiction,* the plaintiff, a private, for-profit corporation, sued retailers under the UCA alleging as the predicate unlawful activity the selling of cigarettes to minors in violation of Penal Code section 308. (17 Cal.4th at pp. 558-559.) The Supreme Court addressed, inter alia, the question of whether the private plaintiff was precluded from maintaining a cause of action under the UCA for violation of the predicate penal statute. The Supreme Court held, among other things, that the plaintiff could maintain a private UCA action for

conduct which violates Penal Code section 308 and the STAKE Act,[7] because of the expansive purpose and scope of the UCA and because those underlying statutes *did not preclude or bar* unfair competition causes of action. (*Stop Youth Addiction, supra,* at pp. 565-566, 567, 573.)

The Supreme Court first recited its earlier holding that " 'whether a private right of action should be *implied* under [the predicate] statute . . . *is immaterial* since *any* unlawful business practice . . . may be redressed by a private action charging unfair competition in violation of Business and Professions Code sections 17200 and 17203.' [Citations.]" (17 Cal.4th at p. 562, first italics added by *Stop Youth Addiction.*) Instead, the Supreme Court has repeatedly explained, where the UCA claim is "not . . . 'based on conduct which is absolutely privileged or immunized by another statute,' . . ." it is not barred. (*Id.,* at p. 565, quoting from *Manufacturers Life Ins. Co.* v. *Superior Court* (1995) 10 Cal.4th 257, 284 [41 Cal.Rptr.2d 220, 895 P.2d 56] (*Manufacturers Life*); see also *Cel-Tech Communications, Inc.* v. *Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at pp. 182-183.) Examples of privilege, immunity or applicable bars are litigation privilege (Civ. Code, § 47, subd. (b); *Manufacturers Life, supra,* at p. 283), and unlawful insurance business practices under section 790.03, part of the Unfair Insurance Practices Act. (*Manufacturers Life, supra,* at pp. 283-284.)[8]

Turning to the predicate statutes at issue in *Stop Youth Addiction,* the court stated that "[s]imply no basis exists for concluding that, by identifying and penalizing in [the predicate statutes] certain tobacco sales practices, the Legislature intended to *bar* unfair competition causes of action based on such practices. [The predicate statutes] nowhere reflect legislative intent to repeal other state statutes insofar as they may apply to tobacco retailers; in [Business and Professions Code] section 17205, on the other hand, the Legislature has clearly stated its intent that the remedies and penalties under the [UCA] be *cumulative* to other remedies and penalties." (*Stop Youth Addiction, supra,* 17 Cal.4th at pp. 565-566, italics added.)

The Supreme Court repeatedly teaches that the UCA allows a private plaintiff to proceed under it to seek redress for conduct which violates any

[7]The Stop Tobacco Access to Kids Enforcement Act, Business and Professions Code sections 22950-22959.

[8]In *Manufacturers Life,* the Supreme Court affirmed the holding of the appellate court that the Unfair Insurance Practices Act (UIPA) (§ 790 et seq.) did not supersede or repeal claims against an insurance company under the Cartwright Act (Bus. & Prof. Code, §§ 16720-16770) or the UCA. The Court held that a private cause of action may be stated under the UCA for violations of the Cartwright Act although no UCA action could be asserted based on violations of the UIPA. (10 Cal.4th at p. 266.) Stevens's causes of action for unfair competition are not based on conduct made unlawful by the UIPA.

predicate statute, unless the defendant is privileged, immunized by another statute, or the *predicate statute expressly bars* its enforcement under the UCA. (*Stop Youth Addiction, supra*, 17 Cal.4th at pp. 562, fn. 5, 566-567, 573; *Cel-Tech Communications, Inc.* v. *Los Angeles Cellular Telephone Co.*, *supra*, 20 Cal.4th 163, 182-183; *Manufacturers Life, supra*, 10 Cal.4th at pp. 283-284.) Guaranty National and API thus miss the mark in arguing that Stevens's action is precluded because *section 1631* does not expressly *create* a private right of action.[9] *Stop Youth Addiction* instructs that we must identify not whether Stevens's right of action is *created* by section 1631 and title 10, section 2110, but whether his private UCA action is expressly *barred* by that underlying statute and regulation. (*Stop Youth Addiction, supra*, at pp. 562, fn. 5, 565-566; *Cel-Tech Communications, Inc.* v. *Los Angeles Cellular Telephone Co., supra*, 20 Cal.4th at pp. 182-183.)

Viewing the language and the legislative history of section 1631, they contain no such bar. The statutory scheme stipulates no criteria whatsoever for its enforcement. Article 3 of chapter 5 (starting with § 1631), makes no mention of private rights of action. Indeed, the article delineates even less of an enforcement scheme than that provided by the predicate statutes in *Stop Youth Addiction*, which the Supreme Court held did not prohibit a private cause of action under the UCA. (*Stop Youth Addiction, supra*, 17 Cal.4th at p. 572.)[10]

Citing the maxim, *expressio unius est exclusio alterius,* defendants argue that section 1633, which declares the violation of section 1631 to be a misdemeanor, constitutes the "only remedy contemplated" with the result that private enforcement and restitution are implicitly excluded. The trial

---

[9] *Crusader Ins. Co.* v. *Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121 [62 Cal.Rptr.2d 620], cited by defendants is distinguished. *Crusader* held no private right of action may be maintained under section 1763 because that statute does not *expressly provide for* such an action. (54 Cal.App.4th at p. 136.) However, Crusader had brought its action under section 1763 for " 'Violation of Insurance Code § 1763' " (54 Cal.App.4th at p. 135, italics omitted), not under the UCA to challenge conduct which violated section 1763. It is that distinction which makes the difference, for the Supreme Court in *Stop Youth Addiction* has demonstrated it is irrelevant whether a private right of action is implied under the predicate statute where the action is brought under the UCA, for conduct violating the underlying law. (17 Cal.4th at p. 562.) Defendants' further argument that the violation of a statute (here section 1631) is not always classified as negligence is irrelevant. Stevens is not alleging negligence, but unfair business practices for transacting insurance in violation of section 1631. Nor is transacting insurance without a license a "mere technical violation" as defendants contend; it is unlawful. (§ 1633.)

[10] We reject outright defendants' contention that Stevens cannot maintain an action on the basis of defendants' "omission." Guaranty National argues that Business and Professions Code section 17200, which provides relief for "any unlawful, unfair or fraudulent business *act or practice*" does not include in its reach the omission to act. (Italics added.) Transacting insurance without a license is an unlawful *act*.

court agreed stating that *section 1631* does not provide for the remedy of disgorgement. However, *Stop Youth Addiction* rejected a similar "implied repeal" argument (17 Cal.4th at pp. 569, 570-573), stating, "the mere fact the Legislature has enacted penal laws concerning minors and tobacco does not impliedly repeal any UC[A] remedy." (*Id.*, at p. 572.) *Stop Youth Addiction* explained, " 'even though a specific statutory enforcement scheme exists, a parallel act for unfair competition is proper pursuant to applicable provisions of the Business and Professions Code.' [Citations.]" (*Ibid.*) Indeed, the UCA declares, "[u]nless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state." (Bus. & Prof. Code, § 17205.) Article 3 of chapter 5 of the Insurance Code *does not expressly provide for exclusivity of its remedies.* (See *Stop Youth Addiction, supra,* at pp. 573-574, and authorities cited therein.) Nothing in the histories of sections 1631 and 1633 reflects the legislative intent to repeal pro tanto the UCA. (*Manufacturers Life, supra,* 10 Cal.4th at p. 275.)

We are further persuaded because the Insurance Commissioner's power does not include imposition of civil liability on those who engage in unfair business practices; his or her power "is limited to enjoining future unlawful conduct and suspending or revoking a license or certificate. [Citation.]" (*Manufacturers Life, supra,* 10 Cal.4th at p. 274.) Yet both specific and preventative relief may be granted a private plaintiff under the UCA to enforce a penalty, forfeiture or penal law in a case of unfair competition. (Bus. & Prof. Code, § 17202.)

Section 1633.5 does not compel a contrary conclusion, as defendants and amici curiae insist. Section 1633.5 states, "It is hereby declared to be the intent of the Legislature in enacting the chapter that the regulations pre-scribed herein be the exclusive regulations relating to the conduct of insur-ance business by persons licensed to act in any of the capacities defined hereunder, *any local regulations or ordinances notwithstanding.*" (Italics added.) In analyzing section 12414.29, an analogous provision to section 1633.5 in the title insurance context, the Supreme Court observed that the phrase "notwithstanding any local regulation or ordinance" expresses the legislative goal "to preempt *local regulation,* not to exempt . . . insurers from other state laws governing unfair business practices." (*Quelimane Co. v. Stewart Title Guaranty Co., supra,* 19 Cal.4th at p. 45.) In fact, section 1633.5's own legislative history reveals that the purpose in enacting the provision was to declare "that State licensing pre-empts local licensing" (Assemblymember Thomas M. Rees, letter to Julian Beck, Governor's Of-fice, regarding Assem. Bill No. 1802 (1959 Reg. Sess.) May 25, 1959, p. 2), and supports our conclusion that section 1633.5 does not proscribe a UCA action.

Defendants next insist, because section 1631 is a *regulatory* statute and title 10, section 2110 is a regulation, that no private right of action may be found to enforce it. Despite the conceptual analysis outlined above, defendants argue that with *regulatory statutes*, we must ascertain whether the private right of action has been affirmatively created before allowing a UCA action to go forward. We wish to reiterate, however, that the issue here is not whether Stevens has the power to *enforce section 1631*, but whether he may sue under the UCA for restitution of profits gained by acts which are made unlawful by section 1631. Moreover, the Supreme Court has rejected the notion that a "private plaintiff lacks UC[A] standing whenever the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action." (*Stop Youth Addiction, supra,* 17 Cal.4th at p. 565.)

A *regulatory* statute may form the basis for such a UCA action. The Supreme Court has long held that the "unlawful" practices which form the basis of a UCA action are ". . . *any practices forbidden by law*, be it civil or criminal, federal, state, or municipal, statutory, *regulatory*, or court-made. [Citation.] It is not necessary that the predicate law provide for private civil enforcement. [Citation.]" (*Saunders* v. *Superior Court* (1994) 27 Cal.App.4th 832, 838-839 [33 Cal.Rptr.2d 438], italics added, quoting *People* v. *McKale* (1979) 25 Cal.3d 626, 632 [159 Cal.Rptr. 811, 602 P.2d 731].) Indeed, more recently, the Supreme Court affirmed this view when it clarified in *Manufacturers Life,* and acknowledged in *Stop Youth Addiction,* that "the Legislature intended that rights and remedies available under [the UCA and state antitrust laws] were to be *cumulative* to the powers the Legislature granted to the Insurance Commissioner to enjoin future unlawful acts and impose sanctions in the form of license and certificate suspension or revocation when a member of the industry violates *any applicable* statute, rule, or *regulation.* [Citation.]" (*Manufacturers Life, supra,* 10 Cal.4th at p. 263, italics added; accord, *Stop Youth Addiction, supra,* 17 Cal.4th at pp. 565, 567-573.)[11]

To summarize, the UCA allows nearly any law or regulation to serve as its basis unless the predicate statute explicitly bars a private right of action, or the defendant is otherwise privileged or immune. Defendants have pointed to

[11]Defendants' reliance on *Samura* v. *Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284 [22 Cal.Rptr.2d 20] is entirely misplaced. *Samura* actually supports the contrary view to defendants' because the *Samura* court acknowledged that while the plaintiff could not sue to enforce the Knox-Keene Act, which fell within the exclusive jurisdiction of the Department of Corporations, the plaintiff could sue under Business and Professions Code section 17200 to enjoin acts which are made unlawful by regulation, ". . . despite the existence of a statutory enforcement scheme." (*Samura* v. *Kaiser Foundation Health Plan, Inc., supra,* at p. 1299.)

nothing in section 1631 or title 10, section 2110 et seq. which would prohibit Stevens from employing them as the basis for a UCA action. (*Stop Youth Addiction, supra,* 17 Cal.4th at p. 562, fn. 5.)

### 2. *The "transaction of insurance."*

■ Defendants have requested we take judicial notice of the various filings they submitted in 1995, to the Department of Insurance for approval of the "Creditors Installment Sales Program." These filings are important, Guaranty National and API argue, because they show that the insurance program at issue does not actually involve the "transaction of insurance," as defined in section 35, with the result that API and the automobile dealers were not required by section 1631 or title 10, section 2110 et seq. to hold licenses. If licenses were not required for this type of insurance program, defendants continue, either they have not violated section 1631 or title 10, or they are specifically exempted from the licensing requirements of section 1631. (§ 1635, subd. (d).) Without a predicate law violation, they argue Stevens cannot maintain his UCA action. Defendants, along with amici curiae, have hinged their arguments on the filings before the Department of Insurance, not only in their attempt to factually "clarify" the nature of the insurance program at issue, but also to make these substantive arguments.[12]

We granted defendants' request to take judicial notice and take notice of those items which are properly noticeable. (Evid. Code, § 459, subd. (a).)[13] Subdivision (c) of section 452 of the Evidence Code permits the trial court and this court to take judicial notice of *"Official acts of the legislative, executive, and judicial departments* of the United States and of any state of the United States." To the degree that the filings in defendants' request for judicial notice are the "official acts" *of the Department of Insurance,* they are noticeable.

However, the bulk of the filing in defendants' request for judicial notice consists of *Guaranty National's* application and supporting documents themselves, which are not "official acts" *of the Department of Insurance.* Papers

---

[12]Defendants have not identified where in the record the court took judicial notice of the filings before the Department of Insurance. Even had it been a proper exercise for the trial court, it is not clear to us that the court took judicial notice of these filings.

[13]Guaranty National takes exception to Stevens's exhibit 1 to his petition for writ of mandate. That exhibit 1 is a document entitled "License Information System." We agree that where exhibit 1 to Stevens's petition for writ of mandate was not before the trial court, we should not consider it. (*Fall River Joint Unified School Dist.* v. *Superior Court* (1988) 206 Cal.App.3d 431, 437 [253 Cal.Rptr. 587].) We take no position therefore on whether exhibit 1 constitutes a false statement.

filed with state and federal agencies, including the Department of Insurance, do not fall within the ambit of subdivision (c) of section 452 of the Evidence Code. " 'We have found no authority and none has been cited for the proposition that materials prepared by private parties and merely on file with state agencies may be judicially noticed pursuant to subdivision (c).' [Citations.]" (*Hughes* v. *Blue Cross of Northern California* (1989) 215 Cal.App.3d 832, 856, fn. 2 [263 Cal.Rptr. 850]; see *Mangini* v. *R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063-1064 [31 Cal.Rptr.2d 358, 875 P.2d 73] [describing scope of subdivision (c)].)

The filings, which defendants would have us notice, are factual allegations and are neither properly noticeable nor reviewable on appeal from, or on a petition for writ from, an order sustaining a demurrer. A demurrer tests the legal sufficiency of the complaint's allegations; not their truth or the plaintiff's ability to prove them. (*Saunders* v. *Superior Court, supra,* 27 Cal.App.4th at p. 840.) These filings, which involve factual assertions and which are submitted as evidence of the nature of the insurance program at issue, are more properly considered on a motion for summary judgment. (Code Civ. Proc., § 437c.)

The only "official acts" that are contained in the request for judicial notice and which are properly noticeable under Evidence Code section 452, subdivision (c), are two letters in which the department issued its approval of the insurance program defined in the filings. We find nothing in the approval letters which influences our holding here. The Department of Insurance merely approved the program of insurance. The approval contains *no finding* that the participants are transacting insurance or hold the necessary licenses to engage in the program. Indeed, in those letters, the department simply *assumed* that the proposer, Guaranty National, was properly licensed.[14] The absence of a finding on an issue which was not before the department cannot be construed as an approval of that issue or an interpretation of any statute it is charged with enforcing. (See *Samura* v. *Kaiser Foundation Health Plan, Inc., supra,* 17 Cal.App.4th at pp. 1248, 1294.) We therefore reject amici curiae's and Guaranty National's arguments that we must defer to the department's approval of the *insurance program* and that our failure to do so will undermine the separation of powers doctrine. In any event, Stevens is not challenging the program itself; he seeks to allege that the transaction of insurance under the program without a license constitutes an unfair business practice. Stevens may state such a claim. Whether defendants are actually

---

[14]The letters from the Department of Insurance state that Guaranty National "may immediately issue policies pursuant to this approval . . . *provided that the insurer is licensed in California to transact the line of insurance for which the approval is given.*" (Italics added.)

engaged in the "transaction of insurance" is a factual matter subject to proof on motion for summary judgment or at trial.

### 3. *With amendment, Stevens can withstand the demurrers.*

Stevens may state causes of action under the UCA for conduct which violates section 1631 and title 10, section 2110. We specifically decline to address the remedies available to Stevens under the UCA. "The cause comes before us at the demurrer stage and 'a demurrer tests the sufficiency of the factual allegations of the complaint rather than the relief suggested in the prayer of the complaint.' [Citation.]" (*Stop Youth Addiction, supra,* 17 Cal.4th at p. 575, fn. 11; see also *Mangini v. R.J. Reynolds Tobacco Co., supra,* 7 Cal.4th at p. 1073.)

Nonetheless, the complaints before us suffer from some serious defects. Stevens has not alleged that *Guaranty National* lacks a license to transact insurance. Rather, Stevens has alleged as Guaranty National's unlawful activity that the company appointed and worked through an unlicensed agent and failed to "discontinue business with API," or require API to obtain a license. While Stevens counters that he seeks to hold Guaranty National liable under theories of respondeat superior for the actions of its unlicensed agent, API, he has not alleged that in his complaints. (See also Cal. Code Regs., tit. 10, § 2119.) Stevens should be given the opportunity to amend his complaints to allege Guaranty National's liability as the principal for the actions of its agent, API. Additionally, Stevens's complaints are inartfully drafted and are susceptible to API's special demurrers for being unclear, vague and ill-stated. For that reason and for the reasons listed above, we think Stevens should be given one more opportunity to amend and clarify. It was an abuse of discretion to sustain the demurrers to the UCA causes of action without leave to amend.[15]

### DISPOSITION

The alternative writ, issued on July 6, 1998, is hereby discharged. The petition for writ of mandate in No. B122526 is granted. The judgment in

---

[15]Defendants assert in their brief and in a separate motion to dismiss that Stevens failed to notify the Attorney General and the Los Angeles County District Attorney of the pendency of this "appellate proceeding," as required by section 17209 of the Business and Professions Code, with the result that this case should be dismissed. Our records indicate that Stevens did serve the district attorney and the Attorney General and they have had ample time in which to intervene had they so chosen. Accordingly, the motion to dismiss was properly denied.

No. B122539 is reversed. Petitioner and appellant is awarded costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.

On October 7, 1999, and October 18, 1999, the opinion was modified to read as printed above.