Filed 7/5/23  Zamora v. Clapp CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| DAVE ZAMORA, | C095440 |
| Plaintiff and Respondent, | (Super. Ct. No. 16CV41649) |
| v. | |
| CLYDE CLAPP, | |
| Defendant and Appellant. | |

Defendant Clyde Clapp appeals a judgment after a bench trial finding he breached fiduciary duties owed to Gus Zamora and that those breaches also constituted financial abuse of an elder; the trial court's order that certain property be sold and the proceeds distributed to plaintiff as specified in the judgment; and an award of attorney's fees and costs to plaintiff.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In November 2007, Gus Zamora, his son Dave Zamora, and Clyde Clapp purchased a single-family home on a five-acre parcel in Valley Springs, California, as an

1

investment.[1] The plan was that each party would own a one-third interest in the property. The purchase price was $415,000, and each party contributed $46,000 towards the down payment. A loan for the remaining amount was obtained in Clyde's name alone, and the monthly payment was around $2,000. The deed of trust was also in Clyde's name alone. The parties disagree about why the loan and the deed were solely in Clyde's name, and about when Gus and Dave learned of this fact. According to Clyde, the loan was in his name alone because Gus and Dave had credit issues and the lender would only lend to him. Clyde also contends Gus and Dave knew about this from the beginning. Dave contends his credit was excellent, and although he knew early on that the loan was only in Clyde's name, Clyde assured him that all three names would be on the deed.

The parties rented out the single-family home for around $1,500 a month, which was not enough to cover the mortgage, taxes, and maintenance. Each party thus agreed to contribute around $300 a month to make up the difference. A joint checking account was opened by Gus and Clyde to handle the property's income and expenses.[2]

The parties planned to build a second rental unit on the property. Work on the second unit began shortly after the property was purchased, and proceeded slowly. At some point, the parties agreed Gus would pay for the materials to build the second unit, and the labor would be supplied by Dave and Clyde. According to Gus, once the second

---

[1] We refer to Gus, Dave, and Clyde by their first names to avoid confusion and for consistency's sake. We note that Gus died in 2018, prior to trial and before his deposition could be taken, and Dave was appointed his successor in interest and executor of his estate, and was substituted in as plaintiff. Gus's version of events thus comes from the allegations in the verified complaint and the trial testimony of Dave (and others).

[2] Clyde complains several times that the trial court found he was the "sole signator" on the checking account, when the evidence showed it was a joint account in both his name and Gus's name and Gus (and Dave) signed checks on the account. The trial court's statement that Clyde was the sole signatory appears in its description of the parties' contentions, not in its findings of fact and conclusions of law, and it does not appear the statement affected the findings and conclusions.

2

rental unit was completed, he would receive all rental proceeds until he was fully reimbursed for materials. Clyde disputes this.

According to Clyde, in late 2012, Gus told him he wanted out of the partnership because he was funding most of Dave's interest in the property and Dave wasn't paying him back. Gus then stopped making payments on the property and stopped funding construction of the second rental unit. Clyde and Dave shared equally in paying expenses on the property until mid-2013, when Dave also stopped making payments. Thereafter, Clyde made all payments on the property. Clyde contends that once Gus and Dave stopped making payments on the property, he became the sole owner and Gus and Dave no longer had an interest in it. Around this time, and unbeknownst to Gus and Dave, Clyde refinanced the loan on the property, again in his name only, which reduced the monthly payments to around $1,500.

According to Gus, in mid-2013, when the second rental unit was close to completion, Clyde told him that he and Dave did not need to make monthly payments on the property for a while because there was enough money in the bank to cover expenses. In mid-2014, Gus and Dave claim they asked Clyde if they needed to start making payments again, and he told them they no longer had an interest in the property and they owed him around $24,000 in order to be caught up on their portion of expenses. Dave claims he told Clyde that he and Gus would pay their portion of what was owed but they needed to see receipts; Clyde refused, and said he didn't have to show them anything. Gus claims it was around this time that he first learned Clyde's name was the only name on the deed. When Dave contacted Clyde to ask him to put their names on the deed, he would not return Dave's phone calls.

Beginning in or around January 2016, the second unit was rented for 10 months for $900 a month. Clyde did not let Gus know the second unit was rented, and did not give him any portion of the rent.

3

Gus filed this lawsuit in May 2016, shortly after learning the second unit was rented. He asserted claims for breach of fiduciary duty, financial abuse of an elder pursuant to the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) (Elder Abuse Act), fraud, promissory estoppel, and constructive trust. Following a bench trial, and at Clyde's request, the trial court issued a statement of decision. The trial court found Gus, Dave, and Clyde formed a joint venture in 2007 to purchase the property and build a second rental unit on it, that Gus never withdrew from the joint venture, and that it continued at least through 2016, when this lawsuit was filed. It also found that participants in a joint venture are fiduciaries with respect to each other, and that Clyde breached his fiduciary duties to Gus and Dave in three respects: (1) by allowing the property to be titled in his name alone without informing Gus and Dave or obtaining their permission; (2) by unilaterally refinancing the property in 2013 in his name alone without Gus and Dave's knowledge or permission; and (3) by secretly renting the second unit in 2016 and collecting approximately $9,000 in rent without sharing it with Gus and Dave. The trial court also found that, regardless of whether Gus and Dave's names were on the deed, Clyde held the property under a constructive trust on behalf of all three parties. The trial court ordered that the property be sold, and "the proceeds distributed in accordance with the original agreement, 1/3 to Clyde, and 2/3 to Plaintiff Gus Zamora's estate." The trial court noted that both sides made claims for reimbursement against each other but found those claims "roughly balance out and will be reflected in the value of the property upon sale with the exception of the $9,000 rental of the second unit which Clyde withheld from his partners. Two-thirds (2/3) of this amount ($6,000) will be withheld from Clyde's portion of the proceeds and paid to Plaintiff as an offset." Finally, the trial court found that Gus was 82 years old in 2007, when the joint venture was formed, and that "Clyde's intentional and repeated violations

4

of his fiduciary duties toward Gus were abusive within the meaning of the Elder Abuse Act," and it therefore awarded costs and attorney fees to Gus's estate.[3]

Judgment was entered on September 7, 2021, and, following an unsuccessful motion for a new trial, this appeal timely followed.

**DISCUSSION**

I

*Standards of Review*

"We apply well-established standards of review to a judgment based upon a statement of decision issued after a bench trial. [Citation.] We review questions of law de novo and we review the trial court's findings of fact under the substantial evidence standard." (*Gajanan Inc. v. City and County of San Francisco* (2022) 77 Cal.App.5th 780, 791-792.) The substantial evidence standard of review "is highly deferential. It has three pillars. First, we accept all evidence supporting the trial court's order. Second, we completely disregard contrary evidence. Third, we draw all reasonable inferences to affirm the trial court. These three pillars support the lintel: We do not reweigh the evidence. [Citation.] Under this standard of review, parties challenging a trial court's factfinding bear an ' "enormous burden." ' " (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581-582.)

Moreover, " 'It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact,' " and it is the appellant's burden to demonstrate otherwise. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) In order to meet this burden, it is the appellant's duty "to point out portions of the record that support the position taken on appeal. The appellate

---

[3]     As noted above, the underlying complaint contained causes of action for fraud and promissory estoppel. The trial court found it was "not necessary to consider Plaintiff's other theories of liability," and we thus do not discuss them further.

5

court is not required to search the record on its own seeking error," and "any point raised that lacks citation may, in this court's discretion, be deemed waived." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.) It is also "a fundamental rule of appellate practice" that the appellant must "completely and fairly summarize the evidence supporting the court's findings and judgment." (*Arechiga v. Dolores Press, Inc.* (2011) 192 Cal.App.4th 567, 571.) "A recitation of only defendants' evidence is not the 'demonstration' contemplated under the above rule. [Citation.] Accordingly, if, as defendants here contend, 'some particular issue of fact is not sustained, they are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*. Unless this is done the error is deemed to be waived.' " (*Foreman & Clark Corp., supra*, at p. 881.)

Finally, "it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate . . . that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) " '[A]n appellant must do more than assert error and leave it to the appellate court to search . . . the law books to test his claim.' " (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162.) "It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.] . . . [Citations.] We are not required to examine undeveloped claims or to supply arguments for the litigants. [Citations.]" (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

With these rules in mind, we turn to Clyde's arguments.

II

*Arguments on Appeal*

Clyde's arguments may be summarized as follows: (1) the evidence does not

6

support the trial court's findings that Clyde breached his fiduciary duties and committed financial abuse of an elder, and it does not support the trial court's allocation of two-thirds of the proceeds of the sale of the property to Gus's estate and one-third to Clyde; (2) the action is barred by the statute of limitations; and (3) the trial court's statement of decision is inadequate.[4] Because it is potentially dispositive, we discuss the statute of limitations argument first, and then proceed to Clyde's remaining arguments.

A.     Statute of Limitations

1.     *Additional relevant facts*

On the last day of trial, Clyde filed a "motion for judgment" arguing that all claims were barred by the statute of limitations. The complaint was filed on May 26, 2016. As to the claim for financial abuse of an elder, Clyde argued the statute of limitations was four years, and the claim was barred because Gus did not give him any money after May 26, 2012. As to the claim for breach of fiduciary duty, Clyde argued the statute of limitations was either three years or four years, but "it really doesn't matter because there is no basis for such a cause of action after May 26, 2012 or May 26, 2013 since Gus Zamora has no evidence of his giving . . . money" after the later of those two dates.

The trial court ruled the action was not barred by the statute of limitations because "Clyde's continuous pattern of breaching his fiduciary obligations gave rise to causes of action therefor for three years after the other partners discovered them, which in no case

---

**4**     We note that the arguments listed in the table of contents do not correspond to the argument section of Clyde's opening brief. We address only the arguments made in the argument section of the brief, and we do not address arguments advanced in the introduction, the statement of facts, or the standard of review. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [briefs must "[s]tate each point under a separate heading or subheading summarizing the point"]; *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 377, fn. 3 [declining to entertain arguments not set out under distinct headings]; *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294 ["we do not consider all of the loose and disparate arguments that are not clearly set out in a heading"].)

7

was more than three years before this lawsuit was filed in 2016 and the last of which, the refinancing of the property,[5] was not discovered by Plaintiff until Clyde's deposition was taken in this case."

### 2. Analysis

"Resolution of a statute of limitations issue is normally a question of fact" to which we apply the substantial evidence standard of review. (*Pearce v. Briggs* (2021) 68 Cal.App.5th 466, 474.) " 'The trial court's finding on the accrual of a cause of action for statute of limitations is upheld on appeal if supported by substantial evidence.' " (*Ibid*.)

The statute of limitations for financial abuse of an elder is four years. (Welf. & Inst. Code, § 15657.7.) The statute of limitations for breach of fiduciary duty is three years if the gravamen of the claim is that the defendant's acts constituted actual or constructive fraud; otherwise it is four years. (*William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1312; *Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 606.) We need not decide whether the breach of fiduciary duty claim in this case is subject to a three- or four-year statute of limitations, because even if we assume it is three years (which the trial court appears to have done), Clyde fails to demonstrate the trial court erred in finding the complaint is not barred by the statute of limitations.

The trial court found Clyde committed three acts that constituted both breach of fiduciary duty and financial abuse of an elder: (1) knowingly allowing title to be issued in his name alone without informing Gus and Dave; (2) refinancing the property in his name alone without informing Gus and Dave; and (3) renting the second unit without

---

**5** We note the refinance occurred in 2013, the rental of the second unit occurred in or around 2016, and the refinance was thus not the last breach of fiduciary duty, but this error does not affect any of the trial court's findings and conclusions.

informing Gus and Dave or sharing any portion of the rent with them. We easily conclude the last two acts occurred within the shorter three-year limitations period (and Clyde does not seriously suggest otherwise). The complaint was filed May 26, 2016, and the second unit was rented beginning in approximately December 2015, which is well within the limitations period. The property was refinanced in mid-2013, and the trial court found plaintiff did not discover this until Clyde's deposition was taken in this lawsuit. It is not clear whether Clyde challenges this finding, but assuming he does, it is supported by substantial evidence—namely, Dave's testimony that he did not learn about the refinance until depositions were taken in this lawsuit. "California courts have long applied the delayed discovery rule to claims involving . . . the breach of a fiduciary relationship." (*Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 43.) "Under the delayed discovery rule, 'the limitations clock only begins to run on [such] causes of action when the injured party discovers or should have discovered the facts supporting liability. [Citations.]" (*Ibid.*) We presume the trial court found the delayed discovery rule applied to any claim based on the refinance, and this finding is supported by the evidence.

We analyze Clyde taking title to the property in his name alone differently, but still conclude he fails to demonstrate the trial court erred in finding the action is not barred by the statute of limitations. The statute of limitations is an affirmative defense that must be proven by the party asserting it. (See Code Civ. Proc., § 458; *Royal Thrift & Loan Co. v. County Escrow, Inc., supra*, 123 Cal.App.4th at p. 42.) As the asserting party, Clyde fails to meet his burden. He argues "[n]ot being on the deed is something that was known in 2007 or should have been" because "Gus and Dave knew that only [Clyde] was going to be on the loan *and therefore the deed*." (Italics added.) Clyde confuses two issues: whether Gus and Dave knew only Clyde was going to be on *the loan*, and whether they knew only Clyde was going to be on *the deed*. Gus claimed he did not learn Clyde was the only name on the deed until July 2014, which is well within a

9

three-year limitations period.  Clyde attempts to dispute this by citing evidence that—at best—demonstrates Gus and Dave knew early on that *the loan* was in Clyde's name alone, but this evidence does not establish Gus and Dave knew *the deed* was in Clyde's name alone.

Moreover, Clyde supports his argument by citing only evidence that is favorable to his version of events, and ignoring evidence that is unfavorable, which, as noted above, is both improper and results in a waiver.  (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738; *Foreman & Clark Corp. v. Fallon, supra*, 3 Cal.3d at p. 881.) Dave testified all three partners filled out the loan application, Clyde took the application to the bank, and "[n]ext thing you know . . . Clyde called me and says, hey, *we* got the loan.  It's all good."  (Italics added.)  Dave acknowledged he learned shortly thereafter that the loan was in Clyde's name alone, but he nonetheless expected all three names would be on the deed.  Dave was specifically asked if he expected to be on the deed if only Clyde was on the loan, and he responded, "Yeah.  Why would he tell me we would be[?]  *He said when it hits the recording office we would all be on the deed, so I believed in my friend*."  (Italics added.)  "A single witness's testimony may constitute substantial evidence to support a finding.  [Citation.]  It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility."  (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)  Dave's testimony constitutes substantial evidence to support the trial court's finding that Clyde took title to the property in his name alone without informing Gus or Dave.

Clyde also cites evidence that Gus kept the joint venture's bank account statements and records at his house to support his argument that Gus knew or should have known all along that only Clyde's name was on the deed.  The bank account records, however, contain no information about whose name is on the deed, and, again, Clyde ignores Dave's testimony on this issue.

10

Finally, Clyde asserts Gus got the escrow documents and tax bills concerning the property, which would only have Clyde's name on them, and Gus thus should have known only Clyde's name was on the deed. This assertion, however, is not supported by any citation to the record, and we thus disregard it. (See *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 601, fn. 6 ["We disregard all factual assertions in the brief which are not supported by record citations"].) And again, this assertion ignores Dave's testimony on the issue.

Clyde thus fails to convince us the trial court erred when it found the action is not barred by the statute of limitations.

B.      Breach of Fiduciary Duty

Clyde challenges the trial court's findings that he breached fiduciary duties to Gus and Dave on several grounds. "Whether a fiduciary duty has been breached is a question of fact. [Citation.] Accordingly, we review the trial court's finding that [Clyde] breached [his] fiduciary duties for substantial evidence." (*Agam v. Gavra* (2015) 236 Cal.App.4th 91, 113.)

The trial court found the parties formed a joint venture in 2007, and Clyde does not challenge this finding.[6] The trial court also found that participants in a joint venture are fiduciaries with respect to each other, and Clyde does not challenge this finding either. Courts have long held that parties to a joint venture are fiduciaries and each "must act in the highest good faith toward the other, and one must not take any advantage over the other by the slightest misrepresentation or concealment." (*Skone v. Quanco Farms* (1968) 261 Cal.App.2d 237, 241; see also *Sime v. Malouf* (1949) 95 Cal.App.2d 82, 97

---

[6]      Although the parties referred to themselves as "partners" rather than "joint venturers," "[f]rom a legal standpoint, both relationships are virtually the same. Accordingly, the courts freely apply partnership law to joint ventures when appropriate." (*Weiner v. Fleischman* (1991) 54 Cal.3d 476, 482.)

11

["As a matter of law joint adventurers are fiduciaries"].) " 'Like partners, joint venturers are fiduciaries with a duty of disclosure and liability to account for profits.' " (*Weiner v. Fleischman, supra*, 54 Cal.3d at p. 482.)

Clyde challenges the trial court's finding that he breached his fiduciary duty by allowing title to be issued in his name alone without informing Gus and Dave. According to Clyde, Gus knew from the outset that title was issued in Clyde's name alone. As discussed at length above, however, the trial court found otherwise, and substantial evidence supports that finding. We also note, "A joint venturer holding property for the venture is a trustee for his co-venturer," (*Bank of California v. Connolly* (1973) 36 Cal.App.3d 350, 372), and, "Where partners or joint venturers have agreed to buy a specific parcel of real property, and one partner or joint venturer, in breach of a fiduciary duty, wrongfully acquires it in his own name, the other partner or joint venturer may bring an action to impose a constructive trust and require the wrongdoing partner or joint venturer to convey the appropriate share of the legal title," (*BGJ Associates v. Superior Court* (1999) 75 Cal.App.4th 952, 970). That is precisely what happened here.

Clyde also challenges the trial court's finding that he breached his fiduciary duty by refinancing the property without Gus's knowledge, and by renting it without informing Gus or sharing any portion of the rent with him. Clyde contends these two acts occurred *after* Gus had withdrawn from the joint venture, which relieved Clyde of any fiduciary duty. Again, the trial court found otherwise, to wit: "While this joint venture was clearly formed, it was never clearly dissolved. There is no evidence whatsoever in this record that either Gus or Dave formed or acted on a desire to terminate the venture and to forfeit their investment therein or their hopes and expectations of profit at its ultimate conclusion. The venture continued through the period of non-controverted activity in 2007 through 2012 or so, but it also endured through the contentious period of 2013-2016. . . . The Court is not persuaded that Gus ever took steps to withdraw from the venture. His actions in ceasing to personally pay for the mortgage and for construction

12

materials in 2012 while he continued to reimburse Dave for these payments, which the Court finds Dave made on his behalf, do not indicate a repudiation of his expectation of ultimately profiting from the venture." Clyde challenges this finding, and contends the joint venture was dissolved sometime in 2011 or 2013 or 2014 (the precise timing is unclear), when Gus and Dave stopped making payments towards the property and Dave stopped working on the second unit. The only evidence he cites to support his contention is an objection from Gus's counsel when Clyde was asked how much money he had put into the property since May of 2013. Gus's counsel objected to the question on relevance grounds "because there was no partnership after June of 2014." The objection was overruled. An unsuccessful objection by counsel is not evidence, and does nothing to undermine the trial court's finding that the joint venture was never dissolved. (See, e.g., CACI No. 106 ["What the attorneys say during trial is not evidence"].) Clyde also fails to support his contention with meaningful argument and citation to authority, and we thus deem it has been forfeited. (*Stevens v. Superior Court, supra*, 75 Cal.App.4th at p. 601, fn. 6 ["We disregard all factual assertions in the brief which are not supported by record citations"]; *Allen v. City of Sacramento, supra*, 234 Cal.App.4th at p. 52 ["When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration"].)

In his reply brief, Clyde cites several provisions of the Corporations Code that deal with disassociation from a partnership, including subdivision (1) of section 16601, which provides a partner is disassociated from a partnership "upon the occurrence of" "[t]he partnership's having notice of the partner's *express will* to withdraw as a partner" (italics added), and then asserts, albeit with no discussion or analysis, that such a disassociation

13

occurred when Gus "stopped paying rent and withdrew."[7]  Clyde did not cite or discuss the Corporations Code in his opening brief, and we thus do not consider this argument because it was raised for the first time in a reply brief.  (*Mansur v. Ford Motor Co.* (2011) 197 Cal.App.4th 1365, 1387-1388 ["We will not consider arguments raised for the first time in a reply brief, because it deprives [the respondent] of the opportunity to respond to the argument"].)  Even if we were to consider this argument, however, we would reject it.

Case law teaches "[a] joint venture continues until the purpose for which it was formed has been accomplished or it is *expressly* extinguished."  (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 821, italics added.)  This rule is also reflected in Corporations Code section 16601's provision that a partner may disassociate from a partnership by providing it with "notice of the partner's *express will to withdraw*."  (Corp. Code, § 16601, subd. (1), italics added.)  Here, the purpose of the joint venture was to make a profit on the property and that purpose had not been accomplished by the time the lawsuit was filed.  Indeed, Dave testified his father never made any money on the property.  Moreover, the trial court found Gus did not expressly withdraw from the venture, and Clyde cites no legal authority for the proposition that Gus withdrew by implication when he stopped paying his portion of the mortgage and other expenses.  Even if such authority existed, this is a particularly unsuitable case to find an implied withdrawal.

Dave testified he often made payments on the property on Gus's behalf and Gus would reimburse him later, and the trial court found Dave continued to make payments on Gus's behalf after Gus stopped making payments (and Clyde does not challenge this

**7**     Gus did not pay rent on the property, he paid his share of that portion of the mortgage, taxes, and insurance that rent did not cover.  Presumably this is what Clyde means.

14

finding). The evidence also shows Gus and/or Dave made payments on the property throughout 2012 and 2013. Gus's last payment (for $2,000) was made in December 2013. Dave testified his last payment was made in May 2013, and he did not make payments thereafter because Clyde told him to "hold up" for a while because they had enough surplus in the joint bank account, and Gus alleged this in the complaint as well. Dave testified he and Gus met with Clyde sometime in 2014 and Clyde stated they owed him $30,000 to get caught up on their payments. When Dave asked for receipts, Clyde refused and said he did not have to show them anything. After this meeting, Clyde would not return Dave's phone calls. Finally, Clyde testified that when he met with Gus and Dave in 2014, he still considered them to be partners. This evidence supports the trial court's finding that Gus never withdrew from the joint venture and it was never dissolved.

Clyde thus fails to convince us the trial court erred in finding in Gus's favor on the breach of fiduciary duty claim.

C.     Financial Elder Abuse

The Elder Abuse Act (Welf. & Inst. Code, § 15610 et seq.)[8] was enacted " 'to protect elders by providing enhanced remedies which encourage private, civil enforcement of laws against elder abuse and neglect.' " (*Arace v. Medico Investments, LLC* (2020) 48 Cal.App.5th 977, 981.) The Elder Abuse Act defines an " '[e]lder' " as "any person residing in this state, 65 years of age or order." (§ 15610.27.) It is undisputed that Gus was over 65 at all relevant times (he was 82 in 2007, when the parties purchased the property), and was thus an elder as defined by the Elder Abuse Act. Financial abuse of an elder occurs when a person "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder . . . *for a wrongful use*." (§ 15610.30,

---

**8**     Further undesignated statutory references are to the Welfare & Institutions Code.

subd. (a)(1), italics added.)  A person is "deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use . . . if the person . . . takes, secretes, appropriates, obtains, or retains possession of property and the person . . . knew or should have known that this conduct is *likely to be harmful to the elder*." (*Id*., subd. (b), italics added.)  "A plaintiff is not required to prove bad faith or fraud to prevail on a claim of financial elder abuse." (*Cameron v. Las Orchidias Properties, LLC* (2022) 82 Cal.App.5th 481, 507.)  "Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, . . . in addition to compensatory damages and all other remedies otherwise provided by law, the court *shall* award to the plaintiff reasonable attorney's fees and costs." (§ 15657.5, subd. (a), italics added.)

The trial court found Clyde's three violations of his fiduciary duties toward Gus also constituted financial abuse within the meaning of the Elder Abuse Act, and thus awarded attorney fees and costs to Gus's estate.  Clyde argues these three acts were not financial abuse.  We disagree.

As to the first act—i.e., allowing title to the property to be issued in his name alone without informing Gus or Dave—Clyde argues it "did not happen."  As discussed above, however, substantial evidence supports the trial court's findings that it did.  Clyde also argues that having the deed issue in his name alone was not done for a wrongful purpose or use, it was done to obtain the loan for the joint venture.  Clyde once again confuses the loan and the deed, and once again ignores Dave's testimony that Clyde assured him all three names would be on title even though only Clyde's name was on the loan.  Moreover, under the Elder Abuse Act, property is taken for a wrongful use if it is "likely to be harmful to the elder." (§ 15610.30, subd. (b).)  Taking title to the property in his name alone was likely to be harmful to Gus because it facilitated Clyde's claim that he owned the property outright and Gus had no interest in it despite having invested tens of thousands of dollars in it.  Finally, Clyde argues taking title in his name was not done with intent to defraud.  As noted above, however, "A plaintiff is not required to prove bad

16

faith or fraud to prevail on a claim of financial elder abuse." (*Cameron v. Las Orchidias Properties, LLC, supra*, 82 Cal.App.5th at p. 507.)

As to the second act, Clyde argues the unilateral refinance was justified because, among other things, it lowered the monthly payment and there was no cash out of the refinance. He cites no evidence to support his argument, however, and even if we assume it is true, unilaterally refinancing the property was harmful to Gus because, again, it facilitated Clyde's claim that he owned the property outright.

Finally, as to the third act, Clyde argues he did not " 'secretly' " rent the second unit, and the trial court's finding that he did is "contrary to the evidence." He cites no evidence, however, that he told Gus or Dave he was renting the second unit, and Dave testified he first learned the second unit was rented when he was doing some work on the property next door and the tenant came over and introduced herself and said she was renting the second unit, and Dave then told his father. This evidence supports the trial court's finding that Clyde rented the second unit without informing Gus or Dave. Clyde also asserts that *he* did not rent the second unit (secretly or otherwise)—his property manager did. It was Clyde, however, who owned the property, and it was Clyde who was listed as the landlord on the rental agreement. Although his property manager collected rent, she did so on Clyde's behalf, and she remitted the balance to him after taking out her property management fee. We reject Clyde's suggestion that he did not have to let Gus and Dave know he had rented the second unit because he utilized a property manager to do so.

D.     Distribution of the Proceeds from the Sale of the Property

The trial court ordered that the property be sold, and Clyde does not challenge this order. He does challenge the order that the proceeds be distributed one-third to him and two-thirds to Gus's estate, with an additional $6,000 of the proceeds withheld from his portion and paid to Gus's estate to account for the fact that Clyde received $9,000 in rental income from the second unit that he did not share with Gus and Dave. Clyde

17

asserts "awarding Gus 2/3's must have been an error" and was a "miscarriage of justice," but that is the entirety of his argument on this issue. He cites no legal authority and proffers no legal argument explaining why this was an error, and, as noted above, " 'an appellant must do more than assert error and leave it to the appellate court to search . . . the law books to test his claim.' " (*Ribakoff v. City of Long Beach, supra*, 27 Cal.App.5th at p. 162.) "It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.] . . . [Citations.] We are not required to examine undeveloped claims or to supply arguments for the litigants. [Citations.]" (*Allen v. City of Sacramento, supra*, 234 Cal.App.4th at p. 52.) " '[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis.' " (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) "[A]sserted grounds for appeal that are unsupported by any citation to authority and that merely complain of error without presenting a coherent legal argument are deemed abandoned and unworthy of discussion." (*Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683, 689.) We deem Clyde has forfeited his argument about the distribution of the proceeds because he fails to support it with meaningful argument and citation to authority.

E.     Statement of Decision

Clyde's final argument concerns the adequacy of the statement of decision. We find it was adequate.

Code of Civil Procedure section 632 provides that, upon the request of any party, the trial court "shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial." Clyde requested a statement of decision, and he complains the trial court did not answer all the questions he asked it to answer and/or did not make findings on all the issues he asked it to make

18

findings on. "The trial court is not required to respond point by point to the issues posed in a request for statement of decision. The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case." (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1379-1380; see also *Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118 ["The trial court is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case"].) The statement of decision in this case fairly discloses the court's determination as to the ultimate facts and material issues in the case.

The last four pages of Clyde's argument consists entirely of a quote from what he identifies only as "Miramar," and which refers to *Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126. Clyde's brief, however, contains absolutely no discussion of *Miramar*'s applicability to this case—it simply includes a lengthy quote from that case and then ends. As we have noted several times, "It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority." (*Allen v. City of Sacramento, supra*, 234 Cal.App.4th at p. 52.) Moreover, "citing cases without any discussion of their application to the present case results in forfeiture." (*Ibid*.) Clyde's arguments regarding the adequacy of the statement of decision are deemed forfeited due to his failure to support them.

## DISPOSITION

The judgment is affirmed.  Plaintiff shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

                                                     /s/
                                           EARL, J.

We concur:

      /s/
ROBIE, Acting P. J.

      /s/
KRAUSE, J.